IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| BLUESTONE VENTURES INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No.  7:25-cv-00569 <br><br> Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Bluestone Ventures Inc. ("Bluestone"), by and through its counsel files this Complaint against Google LLC ("Google") for patent infringement of United States Patent Nos. 9,746,341; 10,274,337; 10,551,208; 10,677,608; 10,996,071; 11,473,925; and 11,619,513 (the "patents-in-suit") (Exhibits 1-7, respectively) and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

### THE PARTIES

2.      Plaintiff Bluestone is a privately held company organized under the laws of the Commonwealth of Virginia.

3.      Defendant Google LLC is a limited liability company organized, existing, and registered to do business under the laws of Delaware. Delaware corporate records indicate that Google is domiciled in Delaware.

4.      Google LLC may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 or anywhere it may be found.

5.      Defendant sold and offered to sell products and services throughout Texas, including in this judicial district, as well as throughout the United States, and introduced products and services that performed infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States.

6.      On information and belief, Google has made, used, offered to sell, offered to sell access to, sold, and/or sold access to products and services, including: (1) the Google Maps Cloud Computing Platform,[1] (2) the Google Maps Website,[2] (3) the Google Maps Mobile Computing Applications,[3] (4) the hardware and software systems and components of the aforementioned products and services, (5) the hardware and

---

[1] *See* https://cloud.google.com/maps-platform/; https://mapsplatform.google.com.

[2] *See* https://www.google.com/maps.

[3] As used herein the term "Google Maps Apps" is intended to refer to "one or more mobile navigation apps made, sold, or offered for sale, by Google or any of its subsidiaries including without limitation Google Maps; Maps - Navigate & Explore; Google Maps Go - Directions, Traffic & Transit; Navigation for Google Maps Go; and Android Auto - Google Maps, Media & Messaging; and Waze - GPS, Maps, Traffic Alerts & Live Navigation."

software systems and components which interact with the aforementioned products and services, including without limitation mobile computing devices which are made, used, sold, offered for sale, and/or imported by Google, including without limitation the Google Pixel Mobile Computing Apparatuses,[4] and/or (6) the numerous features, products, services, hardware, software, and systems that are a part of, dependent upon, or that leverage the aforementioned products and services (referred to hereinafter individually and collectively as "Google Maps Products and Services")

7.     On information and belief, Google, as well as the hardware and software components comprising the Google Maps Products and Services and/or that enable the Google Maps Products and Services to operate, including, but not limited to, browsers, mobile phones, tablets, servers, server software, webserver software, webserver hardware, website client software, mobile computing device client application software, networked communications hardware, network routers, network switches, network hubs, back-end hardware, backend software, cloud-based software, cloud-based hardware, and other hardware and software computing systems and components

---

[4] As used herein the term "Google Pixel Mobile Computing Apparatuses" is intended to refer to individually and collectively and without limitation to the following instrumentalities, including all reasonably similar variants or improvements: Pixel, Pixel XL, Pixel 2, Pixel 2 XL,  Pixel 3, Pixel 3 XL, Pixel 3a, Pixel 3a XL, Pixel 4, Pixel 4 XL, Pixel 4a, Pixel 4a 5G, Pixel 5, Pixel 5a, Pixel 6, Pixel 6 Pro, Pixel 6a, Pixel 7, Pixel C, Pixel Slate, Chromebook Pixel, Pixelbook, Pixelbook Go, Nexus One, Nexus S, Galaxy Nexus, Nexus Q, Nexus 7, Nexus 4, Nexus 5, Nexus 5X, Nexus 6, Nexus 6P, Nexus 9, Nexus 10, Android One Smartphones, and any other mobile computing apparatuses made, sold or offered for sale, or imported by Google or its agents, which are capable of interfacing with any Google Maps software or services.

infringes (literally and/or under the doctrine of equivalents) at least one claim of each of the Asserted Patents.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

9.      On information and belief, Google maintains a regional hub in this District. Specifically, Google's corporate office in Texas is located at 500 West 2nd Street, Austin, Texas 78701. Google actively conducts business from this regional hub in Austin, Texas. This is a regular and established place of business belonging to Google.

10.      On information and belief, Google marketed, sold, and offered to sell access to Google Maps Products and Service, to numerous customers located within this judicial district.

11.      On information and belief, Google has extended the geographic coverage area of Google Maps to include areas within this judicial district, in part, because it wanted Google Maps to be useful to its customers and potential customers, who use Google Maps while they are located in this judicial district, as demonstrated by the screen capture from the Google Maps website below:



*See also* https://www.google.com/maps/about/#!/.

12.   Google is subject to this Court's personal jurisdiction in accordance with due process and/or the Texas Long Arm Statute because, in part, Google "[r]ecruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." *See* Tex. Civ. Prac. & Rem. Code § 17.042.

13.   This Court also has personal jurisdiction over Google because it committed acts of infringement in this judicial district in violation of 35 U.S.C. § 271. In particular, on information and belief, Google has, made, used, offered to sell and sold

licenses for, or access to, Google Maps Products and Services in this judicial district. Additionally, on information and belief, Google has imported, sold and/or offered to sell mobile phones, including but not limited to Pixel brand mobile phones that are pre-loaded with Google Maps client software and are configured to run Google Maps client software in this judicial district.

14.    On information and belief, Google is subject to the Court's personal jurisdiction, in part, because it regularly conducted and solicited business, or otherwise engaged in other persistent courses of conduct in this district, and/or derived substantial revenue from the sale and distribution of infringing goods and services provided to individuals and businesses in this district.

15.    This Court has personal jurisdiction over Google because, *inter alia*, Google, on information and belief: (1) has substantial, continuous, and systematic contacts with this State and this judicial district; (2) owns, manages, and operates facilities in this State and this judicial district; (3) enjoys substantial income from its operations and sales in this State and this judicial district; (4) employs Texas residents in this State and this judicial district, and (5) solicits business and markets products, systems and/or services in this State and judicial district including, without limitation, related to the infringing Google Maps Products and Services.

16.    Venue is proper pursuant to at least 28 U.S.C. § 1400(b), at least because Google, has committed acts of infringement in this district, and has a regular and established places of business in this district.

## BACKGROUND

### Technical Background

17.     At the time of the invention early GPS navigation and tracking systems provided only basic "breadcrumb" trails of location points, lacking true route calculation between those points. *See e.g.,* ('208 Patent Specification at 2:44-3:10). In such conventional systems a mobile device's periodic GPS coordinates are merely plotted and connected by straight lines or arrows, which fails to show the actual road/path traveled. *See e.g.,* ('208 Patent Specification at 15:18-25).

18.     Users would see disjointed point-to-point tracks with no indication of which roads, highways, or turns were taken between those recorded locations.  ('208 Patent Specification at 2:40-43 "**How the mobile device traveled along the underlying routable network infrastructure**, such as roads, highways, exit ramps, etc., from point-to point **is not provided in prior art**.") Emphasis added.

19.     As the patent specification explains, prior art breadcrumb displays did "not provide the user with sufficient information about the mobile device's actual or estimated route" along the road network. ('208 Patent Specification at 2:26-43). These prior systems did not dynamically compute a route from the discrete GPS updates – a problem that "eluded those skilled in the art" up to that point. ('208 Patent Specification at 3:11-24).  The Asserted Patents set forth specific techniques to overcome these shortcomings, and others, in computer-based navigation technology, rather than merely automating an abstract idea.

20.    The patents-in-suit address this technological gap, and others, as detailed more fully below.

## Dynamic Route Computation Using Map Data

21.    The Patents-in-Suit claim computer-implemented methods that generate real-time routes along actual map networks, rather than just plotting raw coordinates. For example, Claim 1 of the '208 patent requires "determining a plurality of possible routes from the starting location to the destination location by performing a route computation… using map data" and displaying those routes on a map as the device travels. ('208 Patent, Claim 1 at 19:39-53).

22.    This means the invention requires the use of digital map data (*e.g.*, road network information) to calculate realistic paths along roads or highways between the start and destination and sets the claimed inventions apart from conventional systems at the time of the invention. ("**The problem with the conventional system** is that these methods and systems **do not provide the user with any actual or estimated route information derived from the location updates**, specifically due to the discrete nature of the location data.") *See* '208 Patent Specification at 2:64-3:1, emphasis added.

23.    By computing routes on a known "network path of map data" (*e.g.*, the actual roads), the invention provides a graphical representation of the device's route along the real roadway. ('208 Patent Specification at 3:1-6).

24.    This is a significant improvement over prior techniques that simply drew straight lines between GPS points. Indeed, the patent notes that people skilled in the art would recognize that dynamically generating a route between discrete locations would "provide a number of improvements over existing prior art," such as a better illustration of travel on actual roads and the ability to calculate total distance traveled. ('208 Patent Specification at 3:1-10.)

25.    Notably, the claims of the Patents-in-Suit use of map data and route computation entails specific technical steps like map-matching GPS coordinates to the nearest road segments. The patent describes that if a location fix from the mobile device does not exactly align with a road in the map data (due to GPS error), the system "snap[s]" the location to the nearest road segment to enable accurate route calculation. (*See* '208 Patent Specification at 3:44-49).

26.    By correlating each received location to "a point on the network pathways of the map data nearest to the actual mobile device's location," the system mitigates positioning errors and ensures the computed route follows the road network. ('208 Patent Specification at 4:55-5:12). This feature of the claims is a specialized algorithmic solution to integrate noisy real-world GPS data with digital map models – a hallmark of a technical improvement in navigation software. The end result is that the user sees the precise roads and turns taken by the device, solving the prior art problem of breadcrumb trails that omitted this information. ('208 Patent Specification at 2:26-43).

27.     These specific technical improvements demonstrate that the claims are rooted in computer mapping technology, not an abstract idea of navigation in the human mind.

28.     Furthermore, the Patents-in-Suit claim specific actions "as the mobile computing device travels" along a route, triggering dynamic updates. *See e.g.,* The '071 Patent at claim 1; The '608 Patent at Claim 1.

29.     In Claim 1 of the '071 patent, for instance, as the device moves, the system (i) continuously "receiv[es] a plurality of [new] locations" from the device and (ii) updates the map display to show those new locations and the routes *See e.g.,* the '071 Patent at claim 1 at 19:48-61. Importantly, the '071 claim adds that the system will "modify or remove at least one of the… possible routes based on… a subsequent location of the mobile device," and display an indication of such modification/removal. *See e.g.,* the '071 Patent at claim 1 at 19:62-67. In practice, this means if the user deviates from one of the originally suggested routes or has traveled past a certain junction, the software dynamically removes outdated route paths or adds a new route from the user's current position. *See e.g.,* '208 Patent Specification at 3:11-24; 15:53-6:2; Fig. 9).



*See e.g.*, '208 Patent Specification at Fig. 9, providing technical specificity concerning the claimed dynamic removal of outdated route paths and addition of new route from the user's current position on a network of roads.

30.    The real-time route management claimed by the Patents-in-Suit, prevents confusion by clearing a route that is no longer relevant (for example, removing a previously displayed alternate route that the user did not take, or the portion of the route behind the user). Conventional navigation apps did not provide such on-the-fly adjustment of multiple displayed routes; they would typically either re-route only after the original route was completely abandoned or simply show a single route at a time. By contrast, the claimed inventions proactively update the road network routing GUI in real-time to reflect the user's actual travel and best remaining options. *See e.g.,* the '071 Patent at claim 1 at 19:62-67.

31.     The real-time route management is a specific user-interface improvement to electronic navigation technology, ensuring the map display remains accurate and uncluttered as conditions change. It addresses a specific technical challenge in computerized navigation – keeping multiple route options updated in real-time – with a specific solution (adding new route segments from the current location and removing old ones.) *See e.g.,* claim 1(iii) of '208 Patent at 19:58-64; claim 1 at elements (d)–(e) of '071 Patent at 19:62-66). Such real-time route management involves instantaneous geospatial calculations and GUI updates that no person could perform mentally or with pen and paper. Rather, it is enabled only by the computer's ability to continually process GPS inputs against digital map data. These claimed steps cannot be performed mentally or with pen and paper; they rely on the computing device's ability to process live GPS inputs against digital map data and update a graphical display accordingly. Nor were these techniques conventional at the time of the claimed inventions. (*See* '208 Patent Specification at 2:26-3:1).

**Predictive Positioning Between Location Updates**

32.     The Patents-in-Suit claim specific techniques for predictive positioning that improve how navigation systems display a moving device's route in real time. For example, claim 11 of the '341 Patent requires that "before receiving a second [position update]… [the system] display on the map a second position of the mobile computing apparatus, the second position being predicted… based on the first… [position update] and one or more metrics associated with the mobile computing apparatus." ('341 Patent, Claim 11). *See also* ('337 Patent, Claim 1). The claimed "metrics" include technical data such as the device's speed, heading, road speed limits, and turn restrictions, which are used to calculate where the device is predicted to be before the next GPS reading arrives. (*See e.g.* '341 Patent, Claim 11; '337 Patent, Claim 1).

33.     The patent specifications explain that a "predictive route [will] graphically illustrate[] the mobile device's location when a location update is received, and a predicted estimate of its current location, based on metrics such as speed, heading, etc., until the next location update arrives." (*See e.g.*, '341 Patent, 15:12-20, Fig. 8)



'341 Patent at Fig. 8, showing an embodiment of the claimed inventions employing predictive positioning between GPS location updates.

34.     Accordingly, the claimed systems use the last known GPS point and these additional metrics to compute and display an interim predicted position on the map, instead of leaving a gap until the next update. This provides a continuous, smooth and more accurate representation of travel along actual network pathways. Conventional GPS mapping systems did not do this. Rather, they typically plotted only the periodic GPS breadcrumb points, which made it "impossible to derive the actual route traveled by the mobile device."(*See e.g.*, '341 Patent, 16:1-15). By contrast, the predictive positioning claimed in the Patents-in-Suit gives users significantly more useful visual information about where and how their device is moving, solving a specific technical shortcoming in prior navigation displays .

35.    The claims of the Patents-in-Suit also further specify a particular display updating algorithm that corrects the display of the route of travel  if the predicted position deviates from the actual new reading, thereby avoiding unnecessary updates. For example, claim 11 of the '341 Patent recites that upon receiving the next GPS update (the "second… position update"), the system "update[s] the display on the map of the [device's] second position… and the partial route of travel… when the [new update] indicates that the display on the map of the second position… does not coincide with" the device's true location from that update. (*See e.g.*, '341 Patent, claim 11; '337 Patent, Claim 1) In other words, if the previously displayed predicted position was accurate, the route of travel need not be redrawn. However, if the prediction was off, the claimed invention corrects it by snapping the displayed route to the correct network pathway based on a position corresponding to the true GPS-reported location. The Patents-in-Suit claim this conditional update algorithmic behavior in the context of predicted route segments. (*See e.g.*, '341 Patent, claim 11; '337 Patent, Claim 1). This intelligent update logic improves computer map displays by reducing visual jitter and computational load—unlike conventional systems that simply plotted each new GPS fix in succession, the claimed invention only adjusts the on-screen route when the prediction needs correction.

36.     Additionally, the Patents-in-Suit tie these predictive displays to the timing of GPS updates in a specific way, ensuring the route on the screen reflects the real-world movement over time. For example, claim 11 of the '341 Patent, requires that "the updated display of the partial route of travel corresponds [to] a time interval associated with the first… and the second… position updates."

37.     The specifications illustrate this with an example: if a device's last known position was at time $t_0$, the system calculates how far it would travel in, say, the next 2 seconds (given its current velocity) and draws a partial route to that estimated position. (*See e.g.*, 341 Patent, 15:12-39, Fig. 8)

38.      If 3 seconds pass before the next update, the route is extended further accordingly. (Id.) By synchronizing the on-screen movement to the actual update interval, the patents solve the technical problem of irregular GPS update rates causing erratic or jumpy navigation visuals. (Id.) The claimed methods specify the timing of the route predictions so that the user interface displays a position that advances smoothly just like a real vehicle would. This was not a well-understood or routine practice in prior navigation systems, which tended to simply display each new GPS point whenever it arrived without dynamically adjusting for longer gaps or using time-based extrapolation. *See e.g.* '341 Patent, 2:9-60. The predictive logic claimed in the Patents-in-Suit thus ensures a more realistic and temporally coherent depiction of a mobile device's travel on the map.

16

39.     The above-referenced claim elements reflect specific improvements in computer-implemented navigation technology, not abstract ideas or mere data manipulation. By using extra sensor/map metrics (*e.g.*, speed, heading, etc.) to predict interim locations, updating the display conditionally based on prediction accuracy, and coupling display changes to actual timing intervals, the Patents-in-Suit achieve a more accurate and smoother tracking of a moving device's route. (*c.f.*, '341 Patent Fig. 8 (showing a predictive route calculation); Fig. 11 (illustrating a "typical breadcrumb history trial"); and related discussion.) These features are rooted in solving technical problems particular to computerized navigation displays (*e.g.*, eliminating discontinuous jumps and uncertainty between GPS fixes). Such a solution is far from the mere idea of "calculating and displaying location" in the abstract. Rather, it is a specifically claimed implementation that improves how the navigation system processes and shows location data in real time. Moreover, the combination of predictive positioning, conditional update logic, and time-synchronized rendering was not conventional in the field.

40.     For example, the patent specifications contrast the invention with prior art systems that only showed points or static lines, underscoring that the claimed approach provides "significantly more information" and a "significant benefit over prior art." (*See e.g.*, '341 Patent, 15:4-11, 16:1-15) The Patents-in-Suit claim a specific transformation of how electronic navigational devices operate to track location, yielding a smoother, more reliable user experience that existing techniques could not provide.

41.    The patents-in-suit address problems (like discontinuous GPS trails, or

remote route sharing) that have no analog in pre-computer navigation – they arise only

in computer-assisted navigation systems. Thus, the claimed solutions are accordingly

rooted in computer technology.

### Multiple Route Alternatives with Travel Time Estimates

42.    Another innovative aspect of the claims of the Patents-in-Suit is the

presentation of multiple route alternatives and their travel times concurrently. The

claims call for determining "a plurality of possible routes" between the start and

destination and, for each, obtaining or determining a travel time estimate. *See e.g.*, the

'208 Patent at claim 1 at (ii)(b) at 19:51-55.

43.     This feature improves the functionality of the navigation system by giving users dynamic choices and context (*e.g.*, "Route A: 30 mins, Route B: 35 mins"). In early GPS navigation, users typically were guided along a single primary route; obtaining an alternate route required manual reprogramming or only occurred after a complete rerouting if you went off-course. By contrast, the claimed invention automatically computes and updates multiple routes and travel times in parallel. *See e.g.*, the '208 Patent at claim 1 at (ii)(b) at 19:51-55. This is a sophisticated and specifically claimed real-time computing task (evaluating several route computations at once and updating times as conditions change). The patent specification reflects this advancement by illustrating the system's ability to display "various possible routes between two points… correlated against map data," and even to predict alternate routes at upcoming forks or junctions in case the user might turn differently. *See e.g.*, '208 Patent Specification at 9:19-21; 14:44-15:4; Fig. 5.



*See e.g.,* '208 Patent Specification Fig. 5, showing the specifically described alternate route algorithms covered by the claims of the Patents-in-Suit.

44.    Providing alternate routes with real-time estimated times of arrival provides situational awareness and flexibility that was not routine or conventional in older navigation solutions. It represents a specific technological improvement in route planning algorithms and user interface, not merely the idea of "choosing a route" in the abstract, but a concrete, algorithmic solution for ***how*** to dynamically compute and present optimized routes.

45.     Real-time multi-route computation requires the claimed invention to handle significantly more data processing (multiple pathfinding operations on the map graph) and to integrate live traffic or speed information to update travel times – capabilities enabled by the claimed inventions' specific programming, as evidenced by the patents' detailed descriptions. *See e.g.*, '208 Patent Specification at 3:50-4:8; 8:13-39; 14:44-15:4.

46.     The Patents-in-Suit claim these features to improved computer functionality. Calculating and displaying multiple routes with travel times was made possible by leveraging the computer's ability to rapidly compute different paths and update graphics, thereby improving the navigation computer's own operation (it now performs tasks it could not do before, and presents information in new ways. In other words, the navigation computer is improved in its functioning, much like how a new engine improves a car. Here the "engine" is the routing algorithm and GUI working in tandem. This is not the case of an abstract idea executed on a generic computer, but a specific enhancement to the computer's mapping capabilities.) This is not a scenario where a computer is used as a passive tool to implement an abstract process. Rather, the computer's mapping and processing capabilities are specifically enhanced through specifically claimed technical solutions to a technological problem (real-time dynamic route guidance) that only arises in the realm of computer-assisted navigation.

47.     Here, the claims of the Patents-in-Suit enable new functionality in the context of computerized navigation, including updating map displays in response to live location data, which yields a better user experience and more effective navigation system. *See e.g.*, Claim 1 of the '608 Patent at element (i) at 19:39-42 ("(i) determine a first estimated location of the mobile computing device, the first estimated location being derived from at least first GPS information associated with the mobile computing device; (ii) calculate one or more alternate routes from the first estimated location of the mobile computing device to the destination location").

### Route Optimization Preferences

48.     The claims of the Patents-in-Suit specify further technical refinements, including the use of route preferences and handling of different map data sources. The claim specifies that the first route calculation is done "according to one or more route preferences, including a route optimization goal or a road preference (or both)" *See e.g.*, Claim 1 of the '608 patent at 19:44-51. In practice, this means the navigation method can consider user-defined or system-defined parameters such as preferring the fastest route vs. shortest distance, avoiding toll roads or highways, *etc.* Incorporating these preferences into the routing algorithm was a specific computer-centric innovation to make the estimated route better reflect the user's actual desired path or typical driving behavior. *See e.g.*, '208 Patent Specification at 14:42-15:4.

49.     For example, the Patents-in-Suit explain that by tailoring route calculations with such preferences (*e.g.*, average speeds on highway vs. surface streets, avoid tolls), the system can "closer approximate the actual route most likely traveled by the vehicle." *See e.g.*, '208 Patent Specification at 14:42-15:4. In other words, the claimed route computation isn't a generic one-size-fits-all path; it is a specifically described dynamic adjustment to given criteria, which improves both the accuracy of the estimation and the relevance to the user.

50.     The claimed route optimization functionality specifically describes a technical feature requiring additional computing steps to apply constraints or weighting in the pathfinding algorithm (for example, the system might compute fastest route by considering real-time traffic speeds, a different computation than shortest distance). *See e.g.*, '208 Patent Specification at 14:42-15:4.

51.     Traditional navigation systems often defaulted to fastest or shortest route without dynamically switching based on user preference profiles. Unlike those one-size-fits-all approaches, the claimed method's ability to accept a "route optimization goal" or "road preference" as input and produce a customized route is another non-conventional aspect not found in simple manual map reading or basic GPS tracking. It improves the functionality of the computer routing engine itself by introducing more complex decision-making rules (beyond merely finding any route, it finds the route optimized to a goal).

**Real-Time Route Sharing Between Devices**

52.    The '513 Patent claims a multi-device navigation scenario, which is a clear computer-centric application. In other words, one mobile device's travel is tracked and displayed simultaneously on a second device's map in real-time. *See e.g.*, claim 12 of the '513 Patent at 19:48-20:30. The claim recites that as the first device travels, its real-time location updates are used to calculate a route of travel along the road network, and "third data representing points along the route" is transmitted to a second mobile device. *See e.g.*, claim 12 of the '513 Patent at elements (iii) and (iv) at 19:67-20:17. The second device then provides a GUI with a map showing the road network and a representation of the first device's route, so a user of the second device can visually track the first device's journey. *See e.g.*, claim 12 of the '513 Patent at element (iv) at 20:2-17. Meanwhile, the first device also displays its own route progress. *See e.g.*, claim 12 of the '513 Patent at element (V) at 20:17-30. Thus, this claimed functionality is firmly rooted in computer and network technology – it requires mobile devices communicating over a network and coordinated map rendering on two separate screens based on shared data. There is no analogous "abstract" process in the human mind that achieves the same result; it's a specific solution to a technical problem: how to allow one person to remotely watch another person's trip in real time on a digital map.

53.     From a technical standpoint, the claimed methods involve complex data processing: (1) collecting GPS data on one device; (2) transmitting it in an optimized form to minimize bandwidth; and (3) updating the remote map display continuously. The patent specification describes these embodiments as a "real-time communications program with an integrated mapping environment" to graphically display remote devices' locations and routes. *See e.g.*, '513 Patent Specification at 9:20-23; 4:27-34; 6:7-29. It also teaches using a server or peer-to-peer connection to relay the location data and perform dynamic route calculations for tracking the remote device. '513 Patent Specification at 4:27-34.

54.     These are specific technical claim limitations, not mere ideas. For example, the fact that claim 12 explicitly requires two distinct user interfaces (a first GUI on the second device showing the first device's route on a map, and a second GUI on the first device showing its own route) underscores the specificity of the solution – it's a particular way of synchronizing route displays that improves the user experience of location sharing applications. *See e.g.*, claim 12 of the '513 Patent at elements (iii)-(v) at 19:67-20:30.

55.     The claimed method automates this in a sophisticated manner: the map data and real-time GPS data are combined to produce a clear visual tracker on both ends. *See e.g.*, claim 12 of the '513 Patent at elements (i)-(iii) at 19:57-20:2.

56.    The multi-device route tracking claimed in the '513 patent was not well-understood, routine, or conventional before – it required innovation in real-time mapping and network data exchange. Indeed, the patent family's background emphasizes that combining mapping and positioning data was known but that simply getting raw location points wasn't enough; these inventions provided "many important benefits" like graphical route representations and dynamic updates that were previously lacking. *See e.g.*, '513 Specification at 3:25-38. Thus, the particular arrangement of two coordinated map interfaces, network communication of route data, and dynamic route rendering on separate devices – as recited for example in the '513 Patent's claims – was a new combination of computer behaviors, functioning together to achieve capabilities that did not exist in prior systems. This inventive combination provides significantly more than the sum of its parts or any longstanding practice in the field.

**The Claimed Inventions Are Specific Technological Solutions, Not Abstract Ideas**

57.     In sum, the patent disclosures support that the asserted claims are directed to specific improvements in navigation technology. They do not merely recite the result of "providing navigation" or "collecting and displaying location data" in the abstract. Rather, they set forth particular methodologies: using map data to compute routes between GPS points, snapping positions to road networks for accuracy, concurrently handling multiple route options and updating them in real time, incorporating user preferences into route generation, and sharing route progress across devices with synchronized GUIs. These are innovative, technical features that enhance the performance and capabilities of computerized navigation systems. *See e.g.,* '208 Patent Specification at 3:1-10.

58.     The patent specifications explicitly identify the technological problems in prior systems (*e.g.* lack of dynamic routing from discrete updates, inability to predict or show alternate paths, etc.) and **how** the inventions solve them in algorithmic-level detail (*see* sections above describing same). The claims of the Asserted Patents do not merely state a result (*e.g.*, 'provide navigation guidance'). Rather, they define a detailed process by which the computer achieves that result, through specific data structures and algorithms (for example, calculating multiple routes with weighted preferences, or predicting movement using speed and heading metrics, etc.).

59.     The Asserted Patents present technological solutions to technological problems. For example, prior art GPS systems could not correlate discrete location fixes to actual road travel or share live routes between devices – technical limitations that the asserted claims overcome with novel map-matching, predictive algorithms and synchronized GUIs. The focus of the claims, therefore, are specific improvements in computer-based navigation, not mere abstract ideas.

60.     The patents even note the novelty of these solutions, stating that an "adequate solution…eluded those skilled in the art" until these dynamic route generation techniques were developed. *See e.g.,* '208 Patent Specification at 3:14-15. Thus, the elements of the claims were not well-understood, routine, or conventional at the time, but instead were inventive implementations of computer technology. *See e.g.,* '208 Patent Specification at 3:1-24.

61.     Accordingly, the Asserted Claims exemplify specific technological advancements in computer-aided navigation, including:

   a.  Using digital map data to compute realistic routes between GPS waypoints, instead of merely plotting raw GPS points (solving the "breadcrumb trail" problem);

   b.  Dynamically updating a displayed route in real-time as the device travels, including removing stale route segments and adding new ones on-the-fly;

c. Predicting the device's interim position between GPS updates using metrics like speed and heading, to create an unconventional, smooth, and continuous route display;

d. Calculating and presenting multiple alternative routes with individualized travel time estimates simultaneously, updating these in real time as conditions change;

e. Incorporating user-selected route preferences (*e.g.*, fastest vs. shortest, avoid tolls, etc.) into the routing algorithm to produce a personalized optimal route;

f. Sharing a route of travel between devices in real time via network communication, allowing one user to visually track another's journey on a synchronized map display; and

g. Additional specific advancements in computer-aided navigation discussed elsewhere herein, including with respect to specific dependent claims discussed below.

**United States Patent No. 9,746,341**

62. On August 29, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 9,746,341 ("the '341 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yarlagadda. A true and correct copy of the '341 patent is attached as Exhibit 1.

63. The '341 patent is presumed valid under 35 U.S.C. § 282.

64.    Bluestone owns all rights, title, and interest in the '341 patent.

65.    Bluestone has not granted a license to Google relating to the '341 patent.

66.    Claim 11 of the '341 Patent is valid under 35 U.S.C. § 101, at least, because it claims "display on the map a second position of the mobile computing apparatus, the second position being predicted by the at least one processor based on… at least one of a speed… a heading… a road speed limit… and a turn restriction" and "display on the map a partial route of travel… from the first position to the second position [as] predicted…." ('341 Patent, Claim 11) This is, at least, because these steps require a specific computer-implemented algorithm that predicts the device's interim location using real-time metrics (such as its speed, heading, and road data) and graphically draws the corresponding route segment on the map between actual GPS updates. By dynamically smoothing the device's movement on the digital map (and only correcting the display if the next GPS update shows the prediction was off), Claim 11 provides a concrete improvement in computerized navigation systems by ensuring a continuous, realistic route display without the jumpy, point-to-point gaps of prior art breadcrumb maps. (*See e.g.*, '341 Patent, 15:4-11, 16:1-15). Such predictive, real-time route updating cannot be performed mentally or with pen and paper and was not conventional in prior art GPS navigation systems, but instead represents a specific technological solution in the realm of computer-based mapping.

67.    Claim 12 and Claim 15 of the '341 Patent are valid under § 101, at least, because they add specific technical requirements on how the location data is obtained, further rooting the invention in a concrete technological context. For example, Claim 12

requires that "the plurality of position updates are received from the GPS receiver and determined based on GPS position signals," and Claim 15 requires that "the plurality of position updates are received periodically." ('341 Patent, claims 12 & 15).  This is, at least, because confining the method to using an actual GPS hardware receiver and to receiving position fixes at periodic intervals anchor the claims a GPS-enabled mobile device operating over time. These claims confirm that the invention is being performed by a specific computer hardware. By specifying the source (satellite-based GPS) and timing of the data, Claims 12 and 15 underscore the practical, specific technological embodiment of the navigation method, as opposed to an idea that could be carried out solely in the human mind.

68.    Claim 13 of the '341 Patent is valid under 35 U.S.C. § 101, at least, because it claims "the map data is provided to the mobile computing apparatus from at least one server over a wireless network." This is, at least, because requiring the map data to be delivered from a server via a wireless network is a specific, concrete implementation of the navigation system using computer networking technology. The mobile device must actively communicate with a remote server to retrieve digital map information in real time, which is a technical operation that involves specialized hardware (wireless transceivers, servers, etc.) and data formats. Such a feature cannot be performed by a person without a computer and was not a feature of purely manual navigation. By claiming this network-based data provision, Claim 13 ensures that the invention operates in the realm of tangible computers and wireless communication. It thereby

improves the functionality of the navigation system through a concrete technological means, firmly grounding the claim in patent-eligible subject matter.

69.    Claim 14 of the '341 Patent is valid under 35 U.S.C. § 101, at least, because it claims "display on the mobile computing apparatus indications of a plurality of possible routes to the destination location based on the one or more metrics" and, further, "as the mobile computing apparatus travels towards the destination location, update the display of the indication of the one or more metrics." ('341 Patent, Claim 14) This is, at least, because displaying multiple route alternatives concurrently that are generated based on real-time metrics (*e.g.*, current traffic or speed data), and continuously updating the displayed metric (*e.g.*, travel time or distance remaining) as the device moves is a specific improvement in computer-assisted navigation functionality. Unlike prior art GPS systems that would show only a single route (or static directions), Claim 14 requires the system to present dynamic alternate routes with context and to adjust that information on-the-fly, giving the user a richer, real-time decision-making tool. These features involve complex computations and graphical updates that cannot be performed in the human mind or by paper maps, but rather require computer processing power and an interactive display. Providing simultaneous route options with live updates is a concrete, inventive application of software and GPS technology that enhances the device's navigation capabilities, and thus represents a patent-eligible technical solution.

## United States Patent No. 10,274,337

70.    On April 30, 2019, the USPTO duly and legally issued United States Patent No. 10,274,337 ("the '337 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yarlagadda. A true and correct copy of the '337 patent is attached as Exhibit 2.

71.    The '337 patent is presumed valid under 35 U.S.C. § 282.

72.    Bluestone owns all rights, title, and interest in the '337 patent.

73.    Bluestone has not granted a license to Google relating to the '337 patent.

74.    Claims 1, 5, and 9 of the '337 Patent are valid under 35 U.S.C. § 101, at least, because each such claim recites "the second position being predicted based on the first position data and one or more metrics … including at least one of a speed of the mobile computing apparatus, a heading of the mobile computing apparatus, a road speed limit, and a turn restriction." This is, at least, because these claims provide a specific technological solution for real-time navigation: the mobile device's next position and a partial route are automatically predicted using live sensor data and/or map-based rules. By enabling the mobile computing device to anticipate its route between discrete GPS updates, the claims improve the functioning of the navigation system itself, yielding a continuous and accurate route display that overcomes the prior art's "breadcrumb" limitations. Moreover, the claimed instructions also correct any mismatch between the predicted and actual position in real time, which further enhances the computer's accuracy and reliability in tracking mobile devices.

2.      Claims 2, 6, and 10 of the '337 Patent are each valid under 35 U.S.C. § 101, at least, because they claim "the first and second position data are received from the GPS receiver." This is, at least, because requiring the use of a GPS receiver – a specific, tangible piece of hardware – ties the claims to a particular technological implementation. By obtaining the location updates from an actual GPS receiver, the claimed invention leverages a real-world sensor to provide precise, real-time positional data, thereby improving the accuracy and performance of the overall navigation system. This hardware integration grounds the claims in a concrete technological context (mobile GPS-based tracking) and ensures that the improvement is firmly rooted in computer technology.

3.      Claims 3, 7, and 11 of the '337 Patent are valid under 35 U.S.C. § 101, at least, because each claims the dynamic updating of route metrics, for example: "as the mobile computing apparatus travels towards the destination location, update the display of the indication of the one or more metrics." This is, at least, because these claims improve the operation of the graphical user interface and the operation of computer navigation systems by automatically recalculating and updating important route metrics (*e.g.*, remaining distance or travel time) in real time as the user travels. The claimed inventions provide specific improvements over the prior art to navigation systems technology. This technical feature enhances the functionality of the navigation device itself, solving the prior shortcomings of static or stale route information in earlier systems.

<u>**United States Patent No. 10,551,208**</u>

34

75.    On February 4, 2020, the United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 10,551,208 ("the '208 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yarlagadda. A true and correct copy of the '208 patent is attached as Exhibit 3.

76.    The '208 patent is presumed valid under 35 U.S.C. § 282.

77.    Bluestone owns all rights, title, and interest in the '208 patent.

78.    Bluestone has not granted a license to Google relating to the '208 patent.

79.    Claim 1 (and similarly independent Claim 13) of the '208 Patent is valid under 35 U.S.C. § 101, at least, because it claims, *inter alia*, "determining a plurality of possible routes from the starting location to the destination location by performing a route computation… using map data" and then dynamically updating the displayed routes as the device travels – for example, "display on the map a new possible route from the current location… and remove a previously displayed possible route" ('208 Patent, Claim 1 at 19:39-64). This is, at least, because performing route calculations on digital map data and updating the map display in real time are specific technical improvements in computer-based navigation that overcome the prior art's basic breadcrumb tracking. '208 Patent Specification at 2:26-43; 3:1-10. By requiring the system to compute actual road network routes (rather than simply connecting GPS dots) and to dynamically add or remove route paths on the GUI in response to the device's movement, Claim 1 is rooted in computer technology and solves a problem unique to computerized navigation (displaying the precise roads traveled). These

concrete limitations, which involve real-time GPS processing and map rendering, cannot be performed mentally or with pen and paper and were not conventional at the time. '208 Patent Specification at 2:26-43; 3:1-10. Accordingly, Claim 1 (and likewise Claim 13, which additionally requires modifying/removing routes based on the map data and current location) is directed to a technological solution rather than an abstract idea.

80.     Claim 2 (and similarly Claim 14) of the '208 Patent is valid under § 101, at least, because it claims, "wherein the mobile computing device is a mobile communication device." This is, at least, because limiting the method to a specific mobile communication device (*e.g.*, a GPS-enabled smartphone or similar) ties the claim to a particular machine and a concrete technological environment, underscoring that the invention is implemented in the real world of mobile computing, not an abstract realm. By requiring a mobile communication device, Claim 2 confirms that the navigation technique relies on specialized hardware and network connectivity to carry out the steps – a far cry from a mental process. In short, this dependent claim further grounds the invention in computer technology, reinforcing that the claimed steps rely on a device's GPS and computing capabilities (and thus cannot be performed in the human mind). *See* '208 Patent Specification at 2:8-25.

81.     Claim 3 and Claim 4 (and similarly Claims 15 and 16) of the '208 Patent are valid under § 101, at least, because they claim the incorporation of route optimization preferences into the navigation method. In particular, Claim 3 recites "obtaining one or more route preferences associated with the mobile computing

36

device," and Claim 4 further requires performing the route computation "using the one or more route preferences" (*See* '208 Patent at Claims 3-4). This is, at least, because allowing the user or system to specify route preferences (for example, favoring fastest time, shortest distance, or avoiding toll roads) is a specific improvement in computerized routing algorithms, not a generic instruction. By tailoring the route calculation according to these preferences, the claimed method engages in additional data processing that improves the quality and relevance of the navigation output. As described in the patent specification, incorporating such preferences enables the system to "closer approximate the actual route most likely traveled" by a user's vehicle, which was not possible in conventional GPS systems that offered only one-size-fits-all routing. *See* '208 Patent Specification at 4:25-45. These claims thus introduce a non-conventional, computer-specific technique (dynamic route calculation with user-defined criteria), confirming that the invention is not merely the abstract idea of "choosing a route," but rather a technologically enhanced navigation method.

82.    Claim 5 and Claim 6 (and similarly Claims 17 and 18) of the '208 Patent are valid under § 101, at least, because they claim a specific network-based functionality, including for example, enabling the user to share the device's current location with another mobile device and doing so via defined communication architectures. Claim 5 recites this core location-sharing capability, and Claim 6 enumerates concrete implementations (*e.g.*, peer-to-peer, peer-to-server, server-to-peer, local storage intermediary, *etc.*) for carrying out the data exchange. This is at least because facilitating real-time route/location sharing between devices is a technical

solution to a networking and mapping problem – it requires transmitting GPS-derived route data over communication networks and updating a remote device's map in sync. By specifying particular architectures for the data sharing (for instance, a peer-to-peer connection or a server-mediated link), the claims demonstrate a practical engineering approach rather than simply an abstract idea of "sharing information." Indeed, implementing two-way, live map updates so that a second user can visually track the first user's travel in real time is a feature firmly rooted in computer technology, involving specialized software and network messaging that were not well-understood or routine before these inventions. Therefore, Claims 5 and 6 (as well as their counterparts 17 and 18) recite specific technical arrangements for multi-device route sharing, confirming their subject matter eligibility under § 101 as a technological improvement in navigation systems.

<u>United States Patent No. 10,677,608</u>

83.    On June 9, 2020, the USPTO duly and legally issued United States Patent No. 10,677,608 ("the '608 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yalagadda. A true and correct copy of the '608 patent is attached as Exhibit 4.

84.    The '608 patent is presumed valid under 35 U.S.C. § 282.

85.    Bluestone owns all rights, title and interest in the '608 patent.

86.    Bluestone has not granted a license to Google relating to the '608 patent.

87.     Claim 1 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "as the mobile computing device travels, … cause the mobile computing device to remove from the display … at least a portion of … routes previously displayed on the map." This is, at least, because it recites a dynamic, real-time navigation improvement that updates and cleans the map display as the user moves - a specific technical solution in computerized navigation, rather than an abstract idea.

88.     Claim 2 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the starting location of the mobile computing device is derived from at least second GPS information associated with the mobile computing device." This is, at least, because using actual GPS data to determine the start location ties the claim to a concrete technological process (satellite-based position fixing), confirming it is not merely an abstract idea but a real-world, hardware-specific implementation.

89.     Claim 3 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the starting location of the mobile computing device is derived from a user input." This is, at least, because it involves human-machine interaction, requiring the user to input a starting point. Such a feature grounds the claim in practical application - the system processes user-provided data in a computing context, moving beyond an abstract algorithm to a concrete user-guided process.

90.     Claim 4 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "calculating of the first route from the starting location to the destination location is based at least in part on a mode of travel associated with the mobile computing device." This is, at least, because the navigation method adapts to specific

travel modes (*e.g.*, car, bike, or foot) in its calculations, representing a technological improvement in route planning. By tailoring route calculations to the mode of travel, the claim implements a concrete rule for computation (different route optimizations for different modes), not a generic abstract idea.

91.     Claim 5 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the mode of travel includes at least one of: (i) motor vehicle travel; (ii) bicycle travel; and (iii) foot travel." This is, at least, because enumerating specific travel modes underscores the claim's real-world applicability. The navigation method explicitly accounts for distinct physical contexts (*e.g.*, driving, cycling, walking), which is a practical application of computing to improve navigation guidance, rather than an abstract concept divorced from real-world use.

92.     Claim 6 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the calculating of the first route … includes calculating the first route such that the first route includes a user defined waypoint location." This is, at least, because incorporating a user-defined waypoint is a concrete feature that improves the navigation process by allowing user customization. It demonstrates that the claim is directed to a specific practical solution (flexibly routing through a chosen point) using technology, instead of merely an abstract route-calculation idea.

93.     Claim 7 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the road preference is selected from one or more of the following: (i) a preference for or against traveling along routes which include highways; (ii) … toll roads; (iii) … roads that are open to truck traffic; and (iv) … arterial roads." This is, at

least, because it details specific routing preferences (such as avoiding highways or tolls) implemented by the navigation system. By accounting for these real-world road types and user choices in the route calculation, the claim is rooted in a practical technological application (customizing route criteria) rather than an abstract idea.

94.    Claim 8 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the calculating of the plurality of possible routes from the starting location to the destination location is based at least in part on one or more dynamic route estimation calculations." This is, at least, because the claim requires dynamic route estimation calculations, meaning the system performs additional computational operations (in real-time) to evaluate routes. This reflects a technical improvement in route planning algorithms, using dynamic calculations (which could involve real-time data) to produce better routes. It is not a bare abstract idea, but a specific implementation of route calculation that improves accuracy and responsiveness of the navigation process.

95.    Claim 9 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the one or more dynamic route estimation calculations are based at least in part on traffic congestion data." This is, at least, because incorporating traffic congestion data into route calculations ties the claim to a concrete technological context - the navigation system uses real-time external data (traffic conditions) to influence its computations. By doing so, the claim addresses a technological problem (accounting for traffic delays) with a technological solution (dynamic re-routing based on traffic), demonstrating a practical application far removed from an abstract idea.

96.      Claim 10 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the first map data and the second map data comprise road map data." This is, at least, because it confines the invention to specific types of map data (road maps), affirming that the claim deals with a tangible application in the field of electronic mapping and navigation. By explicitly requiring road map data, the claim ensures the method operates in a concrete technological environment (digital road maps) rather than covering an abstract notion of mapping.

97.      Claim 11 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the road type data comprises data relating to one or more of the following: (i) road data; (ii) nautical data; (iii) aviation data; and (iv) topographical data." This is, at least, because it extends the navigation method to multiple domains (road, sea, air, and terrain), each of which is a concrete field of use. The claim's reference to these specific categories of map data indicates a technological breadth - the invention can handle various forms of geospatial data - showcasing a practical, real-world scope and not an abstract idea. It underscores that the claim is directed to improving navigation technology across different transportation modes.

98.      Claim 12 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the one or more route preferences are provided by a user of the mobile computing device." This is, at least, because having the route preferences supplied by the user means the invention involves an interactive technological process where user-specific settings directly influence the route calculation. This reflects a personalized navigation solution implemented via technology, anchoring the claim in real-world

computer functionality (processing user preferences) rather than an abstract planning method.

99.    Claim 13 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims "the route optimization goal comprises one or more of the following: (i) a fastest route; and (ii) a shortest route." This is, at least, because specifying concrete optimization goals (fastest vs. shortest route) demonstrates the claim's focus on a specific improvement in route planning algorithms. In other words, the claim does not merely require the system to "optimize" in the abstract - it defines particular measurable criteria, which guides the computer's calculations. This kind of specific goal-oriented computation is a practical application of mathematical calculations in navigation technology, reinforcing the claim's eligibility by showing how the invention improves route selection for real-world use.

100.    Claim 14 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the method further comprises enabling a user of the mobile computing device to share a second estimated location of the mobile computing device with a second computing device." This is, at least, because it introduces a location-sharing functionality between devices, comprising a concrete feature of mobile technology. Enabling one device to share its current location with another device is a specific networked interaction, addressing the real-world problem of communicating travel status. This claim element requires communication hardware and software coordination, confirming that the claim is directed to a computer-centric technological process (inter-device data sharing) rather than an abstract idea.

101.    Claim 15 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims "a second estimated location of the mobile computing device is shared with a second mobile computing device using one or more of the following: (i) a first architecture, wherein the second estimated location of the mobile computing device is routed from the mobile computing device through a wireless connection to a wireless base station, and … from the wireless base station to the second mobile computing device; (ii) a second architecture, wherein the second estimated location … is routed from the mobile computing device through a wireless connection to a wireless base station, and …. from the wireless base station to a remote server; (iii) a third architecture, wherein discrete inferred location packets … are transmitted from a server positioning device gateway to an XML router, and … via an Internet connection to … devices; (iv) a fourth architecture, wherein the second estimated location of the mobile computing device is stored locally; (v) a fifth architecture, wherein the second estimated location … is stored locally and is transferred to … devices; and (vi) a sixth architecture, wherein the second estimated location … is stored locally and is further transferred to an online server system." This is, at least because the claim recites six specific network architectures for sharing location data, detailing exactly how the information flows through base stations, servers, local storage, and network gateways. By specifying multiple architectures for implementing the sharing of location data, the claim is deeply rooted in computer networking technology. These detailed implementations show an inventive concept in how location-sharing is accomplished, confirming that the claim is

directed to a technical solution (various communication frameworks) and not to an abstract result.

102.    Claim 16 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims, "enabling a user of the mobile computing device to share, with a second computing device, a second estimated location of the mobile computing device, an inferred length of travel time from the second estimated location … to the destination location, or an estimated time of arrival at the destination location." This is, at least, because it goes beyond sharing raw location - it explicitly includes sharing derived travel metrics like travel time and ETA. Providing these specific pieces of information to another device reflects a practical application of the navigation data: the system computes useful travel predictions (ETA or remaining time) and shares them. This feature shows a technological utility (remote sharing of live ETA information) that solves a real-world problem (keeping others updated on one's arrival time), solidifying the claim's patent-eligible subject matter.

103.    Claim 17 of the '608 Patent is valid under 35 U.S.C. 101, at least, because it claims "enabling a user of the mobile computing device to share, with a second mobile computing device, a second estimated location … an inferred length of travel time … or an estimated time of arrival … using one or more of the following: (i) a peer-to-peer architecture; (ii) a peer-to-server architecture; (iii) a server-to-peer architecture; (iv) a peer-to-local storage device architecture; (v) a local storage device-to-peer architecture; and (vi) a local storage device-to-server architecture." This is, at least, because the claim specifies multiple concrete communication architectures (peer-to-peer, server-mediated,

local storage-based, *etc.*) for sharing location and travel time data between devices. By delineating these specific technical frameworks for data sharing, the claim highlights an inventive, technology-centric approach. It ensures the sharing of location/ETA information is implemented via particular network configurations, underscoring that the claim addresses a technological challenge with detailed technical solutions, rather than merely proposing an abstract idea of "sharing information."

**United States Patent No. 10,996,071**

104.    On May 4, 2021, the USPTO duly and legally issued United States Patent No. 10,996,071 ("the '071 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yalagadda. A true and correct copy of the '071 patent is attached as Exhibit 5.

105.    The '071 patent is presumed valid under 35 U.S.C. § 282.

106.    Bluestone owns all rights, title and interest in the '071 patent.

107.    Bluestone has not granted a license to Google relating to the '071 patent.

108.    Claim 1 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "display on a map the plurality of possible routes … display the travel time to the destination … and … modify or remove at least one of the … routes based on … a subsequent location of the mobile computing device, and … display … an indication of the modification or the removal." This is, at least, because these steps require a specific technical solution *i.e.* real-time route computation and dynamic updating on a mobile

device's map display-thus representing a concrete improvement in computer-implemented navigation rather than an abstract idea.

109.    Claim 2 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the location information includes GPS information." This is, at least, because the use of GPS data ties the method to a specific technological implementation (receiving real-world satellite-based location signals), grounding the claim in a specific hardware and moving it well beyond a mere abstract concept.

110.    Claim 3 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "display on the map an indication of one or more metrics associated with the mobile computing device; and as the mobile computing device travels … display on the map an updated indication of the one or more metrics." This is, at least, because dynamically displaying device-specific metrics (such as speed or heading) on the moving map is a technical feature that improves the functionality of the navigation system, providing real-time feedback that cannot be performed in the mind and is not abstract.

111.    Claim 4 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the one or more metrics includes at least one of an inferred speed of the mobile computing device, an inferred heading of the mobile computing device, a road speed limit, and a turn restriction." This is, at least, because reciting these specific metrics (device speed, heading, road speed limits, turn restrictions) underscores the technological nature of the claim - it utilizes sensor data, inferred data, and map

database information to enhance navigation, a concrete implementation rather than an abstract idea.

112.    Claim 5 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "at least one of the indications of the plurality of locations of the mobile computing device is displayed on the map by snapping at least one of the indications to a nearest road pathway or segment." This is at least because "snapping" location indications to the nearest road segment is a specific mapping algorithm addressing GPS accuracy issues - a technical solution to a hardware-specific technical problem in navigation (erroneous off-road GPS points) - which demonstrates an inventive application well beyond any abstract idea.

113.    Claim 6 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the route computation is based at least in part on one or more dynamic route estimation calculations." This is, at least, because using dynamic route estimation calculations indicates the claim involves an improved computer-based technique for route planning that accounts for changing conditions in real time, representing a concrete advancement in navigation technology rather than a mere mathematical concept or abstract process.

114.    Claim 7 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the route computation is based at least in part on one or more predictive route calculations." This is, at least, because incorporating predictive route calculations signifies a specialized computer algorithm (*e.g.,* predicting future traffic or user

behavior) at work, which is a specific computer-centric innovation in route navigation systems and not a generic abstract idea that could be performed by a human.

115.    Claim 8 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "enabling a user of the mobile computing device to share location information of the mobile computing device with a second computing device." This is, at least, because allowing real-time location sharing between devices is a concrete, physical application of networking technology in the context of navigation (involving transmission of actual location data), which goes beyond an abstract idea by tying the method to real-world communication between specific mobile computing devices.

116.    Claim 9 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims "determining a plurality of possible routes for a mobile computing device from a current one of the plurality of locations of the mobile computing device to the destination location by performing a route computation … and providing the mobile computing device with route information … to cause the mobile computing device to (a) display on a map the plurality of possible routes … display an indication of a travel time to the destination … and (c) modify or remove the display of at least one of the plurality of possible routes … based on … a subsequent one of the plurality of locations of the mobile computing device." This is, at least, because Claim 9 requires continuously recalculating and updating route options as the device moves (with the mobile device actively displaying route changes and travel times), which is a specific implementation of computer technology for navigation. Such real-time route updating

on a map is a technical improvement in how navigation systems function, rather than an abstract idea that can be performed mentally.

117.    Claim 10 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the location information includes GPS information." This is, at least, because, like Claim 2, the explicit inclusion of GPS data means the method relies on a tangible technological process (satellite-based location tracking by a device), firmly anchoring the claim in the realm of computing technology and ensuring it is not directed to an abstract idea.

118.    Claim 11 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "display on the map an indication of one or more metrics associated with the mobile computing device; and as the mobile computing device travels … display on the map an updated indication of the one or more metrics." This is, at least, because, similar to Claim 3, the requirement to show real-time metrics (like speed or heading) on the map and continuously update them as the device moves is a concrete user interface improvement enabled by computer technology. It provides dynamic information that improves navigation functionality, illustrating an inventive concept rather than an abstract principle.

119.    Claim 12 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the one or more metrics includes at least one of an inferred speed of the mobile computing device, an inferred heading of the mobile computing device, a road speed limit, and a turn restriction." This is, at least, because, as with Claim 4, specifying metrics like inferred speed, heading, road speed limit, or turn restriction shows that the

claim is rooted in technological data processing. It highlights the use of sensors and map data to provide useful navigation information - a specific technical implementation indicative of an improvement in computerized navigation systems, not an abstract idea.

120.     Claim 13 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "as the mobile computing device travels, causing the mobile computing device to display on the map indications of the plurality of locations of the mobile computing device." This is, at least, because displaying the device's traveled path (multiple location points on the map as the device moves) is a concrete visualization technique enabled by computer graphics and GPS data. It represents a real-world computer-centric application that improves how navigation information is conveyed to users, underscoring the claim's focus on a technical solution (visual tracking of movement) rather than an abstract idea.

121.     Claim 14 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "at least one of the indications of the plurality of locations of the mobile computing device is displayed on the map by snapping at least one of the indications to a nearest road pathway or segment." This is, at least, because, as with Claim 5, the map-matching "snapping" technique is a specifically engineered solution to align GPS-derived locations with road data. This kind of data correction and display enhancement is a specific technical feature implemented via algorithms, demonstrating an inventive concept that cannot be performed in the human mind and is not merely abstract.

122.     Claim 15 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the route computation between the current one of the plurality of locations and

the destination location is based at least in part on one or more dynamic route estimation calculations." This is, at least, because performing dynamic route estimation calculations in the midst of travel shows the claim is directed to a computerized improvement in route planning. It leverages real-time data or changing conditions to adjust the route, which is a specific computer-centric application.

123.    Claim 16 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the route computation between the current one of the plurality of locations and the destination location is based at least in part on one or more predictive route calculations." This is, at least, because the inclusion of predictive route calculations indicates the use of advanced computational techniques (such as predicting traffic or user behavior patterns) within the computerized navigation method. This adds a layer of technical innovation by proactively computing routes, representing an improvement in computer functionality for navigation and not an abstract mental process.

124.    Claim 17 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "enabling a user of the mobile computing device to share location information of the mobile computing device with a second computing device." This is at least because, like Claim 8, facilitating location information sharing between computing devices is a concrete application of networked communication in the context of navigation. It involves transmitting data between distinct computing devices, a specific technological operation that confirms the claim is rooted in computer networking and geolocation technology rather than an abstract idea.

125.    Claim 18 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims "causing the mobile computing device to (a) display a map … (b) display on the map a plurality of possible routes from a current one of the plurality of locations of the mobile computing device to the destination location, (c) display on the map an indication of the current location of the mobile computing device, and (d) modify or remove the display of at least one of the plurality of possible routes … based on … a subsequent one of the plurality of locations of the mobile computing device." This is, at least, because Claim 18 explicitly requires a specialized sequence of operations on a mobile device: rendering a map, showing multiple route options from the device's current location, indicating the device's current position, and dynamically updating the route display as the device moves. These are concrete computer-centric steps that improve the functionality of map-based navigation systems (*e.g.*, real-time rerouting and location tracking on a digital map), demonstrating that the claim is directed to a specific practical application rather than an abstract idea.

126.    Claim 19 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the location information includes GPS information." This is, at least, because, in line with prior claims, the requirement of GPS information means the method depends on receiving and using physical signals from GPS satellites. By incorporating this real-world, computer-specific data source, the claim is tethered to a concrete technological realm, reinforcing that it is not directed to an abstract idea.

127.    Claim 20 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "display on the map an indication of one or more metrics associated with the

mobile computing device; and as the mobile computing device travels … display on the map an updated indication of the one or more metrics." This is, at least, because the capability to show and continually update device metrics on the navigation map (for example, current speed or heading) is a specific computer-centric improvement in the way navigation systems convey information. It leverages the device's sensors and computing power to provide timely data to the user, highlighting that the claim covers a technological enhancement rather than an abstract concept.

128.    Claim 21 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the one or more metrics includes at least one of an inferred speed of the mobile computing device, an inferred heading of the mobile computing device, a road speed limit, and a turn restriction." This is at least because identifying concrete metrics like speed, heading, speed limits, or turn restrictions emphasizes the technical specificity of the claim. It demonstrates the claim's focus on processing and displaying specific navigational data using technology, confirming that the claim encompasses a tangible application of computer and sensor data, not an abstract idea.

129.    Claim 22 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "as the mobile computing device travels, causing the mobile computing device to display on the map indications of the plurality of locations of the mobile computing device." This is, at least, because showing the trail of the device's locations on the map in real time is a concrete computer-centric feature that improves the user's situational awareness through technology. It reflects a practical use of computer graphics and

location data (plotting the path taken), indicating that the claim is directed to a specific technical solution in navigation rather than an abstract idea or mental process.

130.    Claim 23 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "at least one of the indications of the plurality of locations of the mobile computing device is displayed on the map by snapping at least one of the indications to a nearest road pathway or segment." This is, at least, because the snapping of location indications to the road grid is a specialized algorithmic solution addressing a technical challenge (GPS drift or inaccuracy). It exemplifies an "inventive concept" implemented via computer technology - aligning raw GPS points to actual road positions - which firmly roots the claim in a technological context beyond an abstract idea.

131.    Claim 24 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the plurality of possible routes from the current one of the plurality of locations of the mobile computing device to the destination location are based at least in part on one or more dynamic route estimation calculations." This is at least because using dynamic route estimation calculations for determining routes shows the claim is directed to the computer-centric problem of improving how navigation systems operate under changing conditions (such as real-time traffic or deviations). This feature signifies a concrete application of algorithms to solve a practical problem in route planning, reinforcing that the claim is focused on a technical improvement rather than an abstract scheme.

132.    Claim 25 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "the plurality of possible routes from the current one of the plurality of locations

of the mobile computing device to the destination location are based at least in part on one or more predictive route calculations." This is, at least, because, similar to Claims 7 and 16, the inclusion of predictive route calculations indicates the claim utilizes forward-looking computational techniques (for example, predicting future travel conditions or user choices) within the navigation process. Such predictive functionality is a specific computer-centric improvement that requires computer implementation, demonstrating that the claim embodies significantly more than an abstract idea.

133.    Claim 26 of the '071 Patent is valid under 35 U.S.C. 101, at least, because it claims, "enabling a user of the mobile computing device to share location information of the mobile computing device with a second computing device." This is, at least, because, as in Claims 8 and 17, the capability for sharing location information with another mobile computing device reflects a real-world networked operation anchored in technology. It involves tangible steps of wireless communication and data exchange, confirming that the claim addresses a practical application in the field of mobile computing and navigation, not an abstract idea.

## United States Patent No. 11,473,925

134.    On October 18, 2022, the USPTO duly and legally issued United States Patent No. 11,473,925 ("the '925 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yarlagadda. A true and correct copy of the '925 patent is attached as Exhibit 6.

135.    The '925 patent is presumed valid under 35 U.S.C. § 282.

136.    Bluestone owns all rights, title, and interest in the '925 patent.

137.    Bluestone has not granted a license to Google relating to the '925 patent.

138.    Claims 1 and 9 are valid under 35 U.S.C. § 101, at least, because they claim a specific dynamic navigation technique, including through their requirement that "the GUI to continue to display … the first possible route of travel and … no longer display … the second possible route of travel" in response to real-time location updates. This is, at least, because the claims recite novel computer-implemented functionality wherein the navigation system uses real-time GPS signals to dynamically recalculate routes and update a map display on-the-fly, employing logic to determine which of multiple possible routes the mobile device is actually taking and then modifying the GUI accordingly. The patent itself describes this as a concrete technological improvement in navigation software (enabling real-time route recalculation and map updates) rather than a mere mental process or generic computer implementation.

139.    Claims 2-3 and 10-11 are valid under 35 U.S.C. § 101, at least, because they require that the multiple possible travel routes calculated by the system be computed on specific hardware by specifying that such calculation be"… calculated by the mobile device" or "… calculated by the one or more servers" in the network. This is, at least, because confining the route-calculation operations to particular computing components (the mobile navigation device itself or a dedicated server system) ties the claims to a specific technical architecture. Such limitations ensure the inventions are implemented in a concrete computing environment.

140.    Claims 4-5 and 12-13 are valid under 35 U.S.C. § 101, at least, because they claim that the system's estimated travel routes are computed by a particular device in the navigation network. This is, at least, because requiring the route estimation computations to be performed on specified computing hardware grounds the claims in a tangible technological implementation. By highlighting that the invention leverages specific computing resources to carry out the route estimation, the claims describe a specific, distributed computing solution.

141.    Claims 6 and 14 are valid under 35 U.S.C. § 101, at least, because they claim that "the first estimated route of travel is an actual route traveled by the mobile device from the first location to the second location along a known network of road paths and the second estimated route of travel is an actual route traveled by the mobile device from the second location to the third location along the known network of road paths." This is, at least, because tying the estimated routes to the actual path traveled on real-world road networks grounds the claims in a concrete physical application. The claimed navigation system is specifically determining the path the vehicle actually took along known roads using map data (the patent even describes snapping GPS points to the nearest road segments to approximate the actual route traveled ). (*See e.g.*, '925 Patent, 3:53-63.) By requiring the estimated routes to correspond to the vehicle's true path on physical roadways, the claims embody a technological improvement in GPS mapping and route matching.

**United States Patent No. 11,619,513**

142.    On April 4, 2023, the USPTO duly and legally issued United States Patent No. 11,619,513 ("the '513 patent") entitled "Method and System for Dynamic Estimation and Predictive Route Generation" to inventors Michael Sheha, Angie Sheha, Stephen Petilli, and Arun Yalagadda. A true and correct copy of the '513 patent is attached as Exhibit 7.

143.    The '513 patent is presumed valid under 35 U.S.C. § 282.

144.    Bluestone owns all rights, title and interest in the '513 patent.

145.    Bluestone has not granted a license to Google relating to the '513 patent.

146.    Claim 12 of the '513 Patent is valid under 35 U.S.C. § 101, at least, because it claims "calculating a route of travel of the first mobile device along a routable network infrastructure… using map data" and "providing… a graphical representation of a… map… such that a user of the second mobile device can visually track… the route of travel of the first mobile device… as the first mobile device travels." This is, at least, because these steps require a specific, computer-implemented solution (real-time route calculation and dynamic graphical tracking on digital maps across mobile devices), which is a concrete computer-centric improvement in navigation rather than an abstract idea.

147.    Claim 13 and Claim 20 of the '513 Patent are valid under § 101, at least, because they add specific enhancements to the shared route data.  Claim 13 requires that "the third data includes waypoint information generated by the first mobile device," and Claim 20 similarly requires that "the third data includes information … identifying points of interest along the route of travel of the first mobile device." This is,

at least, because allowing the first device to embed custom waypoint and point-of-interest data into the route information for the second device reflects a specific practical application in computer technology. These features improve the functionality of the navigation system by providing enriched, user-specific route context, going well beyond merely displaying generic location data and thus reinforcing the claims' patent-eligibility.

148.    Claims 14, 15, and 16 of the '513 Patent are valid under § 101, at least, because they claim dynamic route modification during travel and immediate visualization of those changes, which is a technical improvement in route-tracking systems. For example, Claim 15 recites "modifying the route of travel… to include a stop between a current location… and the destination location" and "transmitting… data representing points along a route of travel… from the current location to the stop to cause the graphical representation of the first map to further show the route of travel… from the current location to the stop". This is, at least, because the ability to adjust the route on-the-fly to include intermediate stops and instantly update the mapped route display on another device is a concrete, computer-enabled functionality. Such real-time route recalculation and visualization of new segments cannot be performed in the human mind and is not a mere abstract idea but rather exemplifies an inventive concept in the realm of mobile navigation technology.

149.    Claim 17 of the '513 Patent is valid under 35 U.S.C. § 101, at least, because it claims extending the route-sharing system to additional devices, underscoring a networked technological implementation. In particular, Claim 17 recites "transmitting

60

to a third mobile device the third data" and "providing… a second GUI on a display of the third mobile device… showing… a representation of the route of travel of the first mobile device." This is, at least, because enabling multiple remote devices to simultaneously receive and graphically display the first device's real-time route reflects a specific distributed computing-centric functionality. The claim requires a concrete application of mobile and network technology (sharing live route data across three devices with corresponding map GUIs), which is far removed from any abstract idea and instead constitutes a technologically rooted solution for multi-user route tracking.

150.    Claims 18 and 19 of the '513 Patent are valid under § 101, at least, because they specify the particular computing components that perform the route calculation, underscoring the invention's tie to computer technology. Claim 18 requires that "the route of travel… is calculated by one or more servers," whereas Claim 19 stipulates that "the route of travel… is calculated by the first mobile device." This is at least because these limitations confine the invention to a specific technical architecture (server-side computation in one case, or on-device computation in the other) rather than an abstract process. By explicitly requiring that the route calculation be carried out by specific hardware devices, the claims ensure a technological implementation and demonstrate an inventive concept rooted in how the computation is performed, reinforcing their patent eligibility.

151.    Claim 21 and Claim 22 of the '513 Patent are valid under 35 U.S.C. § 101, at least, because they claim advanced real-time navigation techniques involving multiple potential routes, which amount to significantly more than an abstract idea. Claim 21, for

example, recites calculating more than one possible route and then "determining, using the map data and one of the plurality of real-time location updates, when the first mobile device has travelled past a fork in a roadway… and (vi) after determining that the first mobile device has travelled past the fork… calculating a third possible route." Claim 22 requires that "the calculated route of travel… includes an actual route of travel… and a possible route of travel" for the first mobile device. This is at least because these features represent a specialized solution in computer-based navigation: the system monitors the device's travel in real time, handles decision points (forks in the road), and dynamically recalculates or displays alternate routes (or simultaneous actual vs. possible routes). Such functionality is a concrete technological improvement in computerized route guidance systems, involving real-time data processing and conditional route updates that cannot be performed with pen and paper. Therefore, Claims 21 and 22 embody an inventive concept that firmly grounds them as patent-eligible subject matter under § 101.

## CLAIMS FOR RELIEF

### Count I – Infringement of United States Patent No. 9,746,341

152.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

153.    Google made, used, offered to sell access to, and sold access to Google Maps Products and Services.

154.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 11 of the '341 patent.

155.    Claim 11 of the '341 patent provides as follows:

11.    A method of controlling a mobile computing apparatus to dynamically predict and display a route of travel of the mobile computing apparatus, wherein the mobile computing apparatus includes a GPS receiver, a memory to store map data, a display, and at least one processor, the method comprising:

providing the mobile computing apparatus with the map data;

providing the mobile computing apparatus with a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the at least one processor to:

individually receive a plurality of position updates;

upon receiving a first one of the plurality of position updates, cause the display to display on a map generated from the map data a first position of the mobile computing apparatus;

before receiving a second one of the plurality of position updates after receiving the first one of the plurality of position updates, cause the display to (i) display on the map a second position of the mobile computing apparatus, the second position being predicted by the at least one processor based on the first one of the plurality of position updates and one or more metrics associated with the mobile computing apparatus, the one or metrics including at least one of a speed of the mobile computing apparatus, a heading of the mobile computing apparatus, a road speed limit, and a turn restriction, and (ii) display on the map a

partial route of travel of the mobile computing apparatus from the first position to the second position predicted by the at least one processor based on the first one of the plurality of position updates and the one or more metrics associated with the mobile computing apparatus; and

upon receiving the second one of the plurality of position updates after causing the display to display on the map the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position, update the display on the map of the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position when the second one of the plurality of position updates indicates that the display on the map of the second position of the mobile apparatus does not coincide with a location identified by the second one of the plurality of position updates, wherein the updated display of the partial route of travel corresponds a time interval associated with the first one of the plurality of position updates and the second one of the plurality of position updates.

*See* '341 patent, Claim 11.

156.    In relation to Google's Google Maps Products and Services, Google practiced, employed and provided a method of controlling a mobile computing apparatus (*e.g.*, a Pixel phone) to dynamically predict and display a route of travel of

the mobile computing apparatus, wherein the mobile computing apparatus includes a

GPS receiver, a memory to store map data, a display, and at least one processor.



*See e.g.*, screenshot showing that the Google Pixel 4 comprised a GPS receiver.



*See e.g.*, screenshots showing that the Google Pixel 4 comprised a memory, a display,

and a processor.



*See e.g.,* showing a Google Pixel phone displaying a route of travel of the mobile

computing apparatus. *See also* https://www.youtube.com/watch?v=GL29sA9w5M0.

157.    In relation to the Google Maps Products and Services, Google practiced,

employed and provided a method of controlling a mobile computing apparatus (*e.g.,* a

Pixel phone) to dynamically predict and display a route of travel of the mobile

computing apparatus, comprising the step of providing the mobile computing

apparatus with the map data.



*See e.g.,* showing a Google Pixel phone with provided map data.

https://www.youtube.com/watch?v=GL29sA9w5M0.

158.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a method of controlling a mobile computing apparatus (*e.g.,* a Pixel phone) to dynamically predict and display a route of travel of the mobile computing apparatus, comprising the step of providing the mobile computing apparatus with a non-transitory computer-readable medium (*e.g.,* the memory within a Pixel phone) storing instructions that, when executed by the at least one processor, (*e.g.,* a processor within a Pixel phone) cause the at least one processor to individually receive a plurality of position updates (*e.g.,* GPS position updates).



*See e.g.* screenshot demonstrating that Google Maps has permission to access a Google Pixel's position updates.  https://youtu.be/7dSJl2im1Rw.



*See e.g.* a series of two screenshots from the Google Maps mobile application showing a plurality positions based on a plurality of position updates.

159.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a method of controlling a mobile computing apparatus (*e.g.*, a Pixel phone) to dynamically predict and display a route of travel of the mobile computing apparatus, comprising the step of providing the mobile computing apparatus with a non-transitory computer-readable medium storing instructions that,

when executed by the at least one processor, cause the at least one processor to, upon receiving a first one of the plurality of position updates, cause the display (*e.g.*, a display on a Google Pixel smartphone) to display on a map generated from the map data a first position of the mobile computing apparatus.



*See e.g.*, Screenshot showing a Google Pixel smartphone displaying the position of the mobile computing apparatus (*e.g.*, the blue pedestrian icon) on a map. *See also* https://www.youtube.com/watch?v=GL29sA9w5M0.



*See e.g.* a screenshot from the Google Maps mobile application showing the first position from the first one of the plurality of position updates.

160.    On information and belief, in relation to the Google Maps Products and Services, Google practiced, employed and provided a method of controlling a mobile computing apparatus (*e.g.*, a Pixel smartphone) to dynamically predict and display a route of travel of the mobile computing apparatus, comprising the step of providing the mobile computing apparatus with a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the at least one processor to, before receiving a second one of the plurality of position updates after receiving the first one of the plurality of position updates, cause the display to (i) display on the map a second position of the mobile computing apparatus, the second position being predicted by the at least one processor based on the first one of the plurality of position updates (*e.g.*, the first GPS location update) and one or more metrics associated with the mobile computing apparatus, the one or metrics including at least one of a speed of the mobile computing apparatus, a heading of the mobile computing apparatus, a road speed limit, and a turn restriction, and (ii) display on the map a partial route of travel of the mobile computing apparatus from the first position to the second position predicted by the at least one processor based on the first one of the plurality of position updates and the one or more metrics associated with the mobile computing apparatus.



*See e.g.* a screenshot from the Google Maps mobile application showing the second position from the first one of the plurality of position updates, and the partial route from the first position to the second position.



*See e.g.*, screenshot showing that the Google Maps API predicts the position of mobile phones based in part on GPS positions received by the device. *See also* https://youtu.be/A2R0_gI_CA0.





*See e.g.*, series of three screenshots and second series of two screenshots, both showing that Google Maps predicts the position of mobile phones even when GPS signals are blocked from reaching the mobile computing device, supporting an inference that Google Maps predicts the position of mobile phones, based in part on at least one of a speed of the mobile computing apparatus, a heading of the mobile computing

apparatus (as shown by the shaded blue sector above) a road speed limit, or a turn restriction.



*See e.g.*, Screenshot of presentation explaining Google Maps position prediction in conjunction with known road speed limits. *See also*

https://www.youtube.com/watch?v=A2R0_gI_CA0.



*See e.g.*, Screenshot of presentation explaining Google Maps position prediction in conjunction with known road speed limits and "actual speed" data. *See also* https://www.youtube.com/watch?v=A2R0_gI_CA0.

161.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a method of controlling a mobile computing apparatus (*e.g.*, a Pixel smartphone) to dynamically predict and display a route of travel of the mobile computing apparatus, comprising the step of providing the mobile computing apparatus with a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the at least one processor to, upon receiving the second one of the plurality of position updates (*e.g.*, a second GPS update) after causing the display to display on the map the second position of the mobile computing apparatus (*e.g.*, as shown below) and the partial route of travel of the mobile computing apparatus from the first position to the second position, (*e.g.*, as shown below) update the display on the map of the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position when the second one of the plurality of position updates indicates that the display on the map of the second position of the mobile apparatus does not coincide with a location identified by the second one of the plurality of position updates, (*e.g.*, as shown below)  wherein the updated display of the partial route of travel corresponds a time interval associated with the first one of the plurality of position updates and the second one of the plurality of position updates.

74



*See e.g.* a series of four screenshots from the Google Maps mobile application displayed in the order they were recorded from left to right. The first (left most) screenshot showing the first position; the second (middle left) screenshot showing the second position; the third (middle right) screenshot showing the partial route from the first position to the second position; and the fourth (right most) screenshot showing an updated second position upon receiving the second one of the plurality of GPS position updates.

162.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

## **Count II – Infringement of United States Patent No. 10,274,337**

163.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

164.    Google made, used, offered to sell access to, and sold access to the Google Maps Products and Services.

165.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '337 patent.

166.    Claim 1 of the ' patent provides as follows:

1.    A mobile computing apparatus comprising:

a GPS receiver;

a memory;

a display;

at least one processor; and

a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the mobile computing apparatus to

receive map data and store the map data in the memory,

receive and process first position data and second position data for the mobile computing apparatus,

after receiving and processing the first position data, cause the display to display on a map generated from the map data a first position of the mobile computing apparatus,

before receiving and processing the second position data and after receiving and processing the first position data, cause the display to (i) display on the map a second position of the mobile computing apparatus, the second position being predicted based on the first position data and one or more metrics associated with the mobile computing apparatus, the one or metrics including at least one of a speed of the mobile computing apparatus, a heading of the mobile computing apparatus, a road speed limit, and a turn restriction, and (ii) display on the map a partial route of travel of the mobile computing apparatus from the first position to the

second position based on the first position data and the one or more metrics associated with the mobile computing apparatus, and

after receiving and processing the second position data and after causing the display to display on the map the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position, update the display on the map of the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position when the second position data indicates that the display on the map of the second position of the mobile apparatus does not coincide with a location identified by the second position data.

*See* '337 patent, Claim 1.

167.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus (e.g., a Pixel smartphone) comprising a GPS receiver.

Wireless and Location

Wi-Fi 2.4 GHz + 5 GHz 802.11 a/b/g/n/ac 2x2 MIMO

Bluetooth 5.0 + LE (HD codecs: AptX, AptX HD, LDAC)

NFC

Google Cast

GPS,[8] GLONASS, Galileo[8]

*See e.g.*, screenshot showing that the Google Pixel 4 comprised a GPS receiver.

168.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus comprising a memory, a display, and at least one processor.



*See e.g.*, screenshots showing that the Google Pixel 4 comprised a memory, a display, and a processor.

169.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus comprising a non-transitory computer-readable medium storing instructions (*e.g.*, instructions relating to the Google Maps mobile application) that, when executed by the at least one processor, cause the mobile computing apparatus to, receive map data and store the map data in the memory.



*See e.g.,* showing a Google Pixel phone with received and stored map data. *See also*

https://www.youtube.com/watch?v=GL29sA9w5M0.

170.    Google made, used, sold, offered to sell and/or imported a mobile

computing apparatus comprising a non-transitory computer-readable medium storing

instructions that, when executed by the at least one processor, cause the mobile

computing apparatus to, receive and process first position data (*e.g.,* location data

associated with a first GPS-determined position) and second position data (*e.g.,* location

data associated with a second position of a Google Pixel Smartphone) for the mobile

computing apparatus.



*See e.g.* screenshot demonstrating that Google Maps has permission to access a Google Pixel's position updates. *See also,* https://youtu.be/7dSJl2im1Rw.

171.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus comprising a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the mobile computing apparatus to, after receiving and processing the first position data, cause the display to display on a map generated from the map data a first position of the mobile computing apparatus (*e.g.*, location associated with a first GPS-determined position).



*See e.g.* a screenshot from the Google Maps mobile application showing the display on a map generated from the map data a first position of the mobile computing apparatus (*e.g.*, location associated with a first GPS-determined position).



*See e.g.,* screenshot showing a Google Pixel smartphone displaying the position of the mobile computing apparatus (*e.g.,* the blue pedestrian circle icon) on a map. *See also* https://www.youtube.com/watch?v=GL29sA9w5M0.



*See e.g.,* screenshot of presentation displaying the location of GPS-determined positions (red markers).

172.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus comprising a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the mobile computing apparatus to, before receiving and processing the second position data (*e.g.,* a second GPS position) and after receiving and processing the first position data, (*e.g.,* a first GPS position) cause the display to (i) display on the map a second position of the mobile computing apparatus, (*e.g.,* the positions in the right most screenshot in both sets of screenshots immediately below) the second position being predicted based on the first position data (*e.g.,* location data associated with a first GPS-determined position) and one or more metrics associated with the mobile computing apparatus, the one or metrics including at least one of a speed of the mobile computing apparatus, a heading of the mobile computing apparatus, a road speed limit, and a turn restriction, and (ii) display on the map a partial route of travel of the mobile computing apparatus from the first position to the second position based on the first position data and the one or more metrics associated with the mobile computing apparatus.





*See e.g.*, series of three screenshots and a second series of two screenshots, both showing that Google Maps predicts the position of mobile phones even when GPS signals are blocked from reaching the mobile computing device, supporting an inference that Google Maps predicts the position of mobile phones, based in part on at least one of a speed of the mobile computing apparatus, a heading of the mobile computing

apparatus (as shown by the shaded blue sector above) a road speed limit, or a turn restriction.



*See e.g.*, screenshot of presentation explaining Google Maps position prediction in conjunction with known road speed limits. *See also*

https://www.youtube.com/watch?v=A2R0_gI_CA0.



*See e.g.*, screenshot of presentation explaining Google maps position prediction in conjunction with known road speed limits and "actual speed" data. *See also* https://www.youtube.com/watch?v=A2R0_gI_CA0.



*See e.g.* a series of two screenshots from the Google Maps mobile application displayed in the order they were recorded from left to right. The first (left most) screenshot showing the first position; the second (right most) screenshot showing the display on the map a partial route of travel of the mobile computing apparatus (e.g., a Google Pixel Smartphone) from the first position to the second position based on the first position data (a first GPS position) and the one or more claimed metrics associated with the mobile computing apparatus.

173.    Google made, used, sold, offered to sell and/or imported a mobile computing apparatus comprising a non-transitory computer-readable medium storing instructions that, when executed by the at least one processor, cause the mobile computing apparatus to, after receiving and processing the second position data (*e.g.*, a second GPS update) and after causing the display to display on the map the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position, (*e.g.*, as shown

below) update the display on the map of the second position of the mobile computing apparatus and the partial route of travel of the mobile computing apparatus from the first position to the second position when the second position data indicates that the display on the map of the second position of the mobile apparatus does not coincide with a location identified by the second position data, (*e.g.*, as shown below).



*See e.g.* a series of four screenshots from the Google Maps mobile application displayed in the order they were recorded from left to right. The first (left most) screenshot showing the first position; the second (middle left) screenshot showing the second position; the third (middle right) screenshot showing the partial route from the first position to the second position; and the fourth (right most) screenshot showing an updated second position upon receiving the second one of the plurality of GPS position updates.

174.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

## Count III – Infringement of United States Patent No. 10,551,208

175.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

176.    Google made, used, offered to sell access to, and sold access to the Google Maps Products and Services.

177.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '208 patent.

178.    Claim 1 of the '208 patent provides as follows:

1.    An electronic navigation method, comprising:

receiving a starting location associated with a mobile computing device, the starting location being in reference to map data;

receiving a destination location, the destination location being in reference to the map data;

determining a plurality of possible routes from the starting location to the destination location by performing a route computation between the starting location and the destination location using map data, the plurality of possible routes being in reference to the map data;

for each of the plurality of possible routes, obtaining a travel time to the destination location; and

in response to the mobile computing device traveling along one of the plurality of possible routes,

(i) determining a plurality of locations of the mobile computing device from location information obtained from the mobile computing device,

(ii) causing the mobile computing device to display on a map generated using the map data (a) the plurality of possible routes, (b) the travel time to the destination for at least one of the plurality of possible routes along which the mobile computing device is traveling, and (c) an

indication of the plurality of locations of the mobile computing device, and

(iii) causing the mobile computing device to at least one of (a) display on the map a new possible route from a current location of the mobile computing device to the destination location and (b) remove a previously displayed possible route from the starting location to the current location of the mobile computing device.

*See* '208 patent, Claim 1.

179.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of receiving a starting location associated with a mobile computing device, (*e.g.*, blue dot shown below) the starting location being in reference to map data.



*See* Google Maps screenshot showing a starting location associated with a mobile

computing device (*e.g.*, the blue dot above) in reference to map data.

180.    In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of

receiving a destination location, (a location represented by "B" below) the destination

location being in reference to the map data.



*See* Google Maps screenshot showing a destination location (a location represented by

"B" above) in reference to map data.

181.    In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of

determining a plurality of possible routes (*e.g.*, the 2 hr 58 route, the 3 hr 51 min route,

and the 3 hr 1 min route) from the starting location (*e.g.*, the location represented by the

blue dot) to the destination location (*e.g.*, the location represented by the "B")  by

performing a route computation between the starting location and the destination

location using map data, the plurality of possible routes being in reference to the map

data.



*See* Google Maps screenshot showing a plurality of possible routes (*e.g.*, the 2 hr 58

route, the 3 hr 51 min route, and the 3 hr 1 min route) from the starting location (*e.g.,* the

location represented by the blue dot) to the destination location (*e.g.*, the location

represented by the "B") in reference to map data.

182.     In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of for

each of the plurality of possible routes, (*e.g.*, the 2 hr 58 route, the 3 hr 51 min route, and

the 3 hr 1 min route)  obtaining a travel time (*e.g.*, 2 hours and 58 minutes;  3 hours and

51 minutes, and 3 hours and 1 minute) to the destination location.



*See* Google Maps screenshot showing a plurality of possible routes, (*e.g.*, the 2 hr 58

route, the 3 hr 51 min route, and the 3 hr 1 min route)  in reference to their travel times

(*e.g.*, 2 hours and 58 minutes;  3 hours and 51 minutes, and 3 hours and 1 minute) to the

destination location.

183.    In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of in

response to the mobile computing device traveling along one (*e.g.,* the blue route) of the

plurality of possible routes, (*e.g.*, the routes shown below) (i) determining a plurality of

locations of the mobile computing device from location information obtained from the mobile computing device.



*See* Google Maps screenshots showing the mobile computing device traveling along one of the plurality of possible routes(*e.g.,* the blue route).



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps receives location updates generated by the mobile device.

184.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of in response to the mobile computing device traveling along one of the plurality of possible routes (ii) causing the mobile computing device to display on a map generated using the map data (*e.g.*, the maps shown below) (a) the plurality of possible routes, (*e.g.*, the routes shown below) (b) the travel time (*e.g.*, "38 min", "37 min", and "36 min) shown below, to the destination for at least one of the plurality of possible routes (the colored routes shown below) along which the mobile computing device is traveling, and (c) an

indication of the plurality of locations of the mobile computing device (e.g., the

locations of the mobile phone shown below) .



*See* Google Maps screenshots showing that as the mobile device travels to the

destination location, Google Maps displays on a map (a) the plurality of possible routes,

(b) the travel time to the destination for at least one of the plurality of possible routes

along which the mobile computing device is traveling, and (c) an indication of the

plurality of locations of the mobile computing device.

185.     In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of in

response to the mobile computing device traveling along one of the plurality of possible

routes, (iii) causing the mobile computing device to at least one of (a) display on the

map a new possible route from a current location of the mobile computing device to the

destination location (*e.g.,* the grey routes below) and (b) remove a previously displayed

possible route from the starting location to the current location of the mobile computing device.



*See* Google Maps screenshots showing that as the mobile device travels to the destination location, Google Maps displays on the map a new possible route from a current location of the mobile computing device to the destination location (*e.g.,* the grey routes above) and (b) removes previously displayed routes from the starting location to the current location of the mobile computing device.

186.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

## Count IV – Infringement of United States Patent No. 10,677,608

187.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

188.    Google made, used, offered to sell access to, and sold access to the Google Maps Products and Services.

189.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '608 patent.

190.    Claim 1 of the '608 patent provides as follows:

1. An electronic navigation method, comprising:

receiving a starting location for a mobile computing device, the starting location for the mobile computing device being in reference to first map data;

receiving a destination location, the destination location being in reference to second map data;

calculating a first route from the starting location to the destination location, wherein the calculating of the first route from the starting location to the destination location includes calculating the first route according to one or more route preferences, the one or more route preferences including a route optimization goal, or a road preference, or a route optimization goal and a road preference;

calculating an estimated travel time from the starting location of the mobile computing device to the destination location along the first route;

causing the mobile computing device to display a map;

causing the mobile computing device to display on the map at least a portion of the first route; and

as the mobile computing device travels,

(i) determine a first estimated location of the mobile computing device, the first estimated location being derived from at least first GPS

information associated with the mobile computing device,

(ii) calculate one or more alternate routes from the first estimated location of the mobile computing device to the destination location,

(iii) cause the mobile computing device to display on the map the one or more alternate routes,

(iv) cause the mobile computing device to display an indication on the map of the first estimated location of the mobile computing device in relation to the one or more alternate routes, and

(v) cause the mobile computing device to remove from the display on the map at least a portion of the one or more alternate routes previously displayed on the map, or at least a portion of the first route, or at least a portion of the one or more alternate routes previously displayed on the map and at least a portion of the first route.

*See* '608 patent, Claim 1.

191.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of receiving a starting location for a mobile computing device, (*e.g.*, blue dot shown below) the starting location for the mobile computing device being in reference to first map data.



*See* Google Maps screenshot showing a starting location associated with a mobile computing device (blue dot) in reference to map data.

192.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of receiving a destination location, (*e.g.*, "B")  the destination location being in reference to second map data.



*See* Google Maps screenshot showing a destination location (represented by "B") in reference to map data.

193.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of calculating a first route from the starting location to the destination location, wherein the calculating of the first route from the starting location (*e.g.*, the blue dot shown below) to the destination location (*e.g.*, "B" shown below) includes calculating the first route (*e.g.*, the 2 hour 58 minute route shown below) according to one or more route preferences, the one or more route preferences including a route optimization goal, (*e.g.*, a preference for the fastest route shown below) or a road preference (e.g., a preference regarding a toll road as shown below) or a route optimization goal and a road preference.



*See* Google Maps screenshot showing the first route (*e.g.*, the 2 hour 58 minute route shown above) that is calculated according to a route optimization goal, (*e.g.*, a preference for the fastest route shown below) and a road preference (e.g., a preference regarding a toll road as shown below).

194.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of calculating an estimated travel time (*e.g.*, 2 hours and 58 minutes) from the starting location of the mobile computing device (*e.g.*, the location represented by the blue dot) to the destination location (*e.g.*, the location represented by the "B") along the first route (*e.g.*, the 2 hour 58 minute route).



*See* Google Maps screenshot showing an estimated travel time from the starting location of the mobile computing device to the destination location along the first route.

195.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of causing the mobile computing device to display a map.



*See* Google Maps screenshot showing a map displayed on a mobile computing device.

196.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of causing the mobile computing device to display on the map at least a portion of the first route (*e.g.*, the 2 hour 58 minute route).



*See* Google Maps screenshot displaying the first route on a map.

197.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of, as the mobile computing device travels, (i) determining a first estimated location of the mobile computing device, (the estimated smartphone location shown below) the first estimated location being derived from at least first GPS information associated with the mobile computing device.



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps receives location updates derived from GPS information associated with the mobile computing device.

About this app  →

Explore and navigate the world with confidence using Google Maps. Find the best routes with live traffic data and real-time GPS navigation for driving, walking, cycling, and public transport. Discover over 250 million businesses and places - from restaurants and shops to everyday essentials – with photos, reviews, and helpful information.



*See*

https://play.google.com/store/apps/details?id=com.google.android.apps.maps&hl=e
n_US (describing Google Maps' location determination based on "real time GPS

navigation.)

198.    In relation to the Google Maps Products and Services, Google practiced,

employed and provided an electronic navigation method comprising the step of, as the

mobile computing device travels, (ii) calculating one or more alternate routes (*e.g.*, the

routes shown below) from the first estimated location of the mobile computing device

to the destination location.



*See* Google Maps screenshot showing alternate routes (*e.g.*, the routes shown above) from the estimated location of the mobile computing device to the destination location.

199.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of, as the mobile computing device travels, (iii) causing the mobile computing device to display on the map the one or more alternate routes (*e.g.*, the routes shown below).



*See* Google Maps screenshot showing alternate routes (*e.g.*, the routes shown above) from the estimated location of the mobile computing device to the destination location.

200.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of, as the mobile computing device travels, (iv) causing the mobile computing device to display an indication on the map of the first estimated location of the mobile computing device (e.g., the estimated device locations shown below) in relation to the one or more alternate routes (*e.g.*, the alternate routes shown below).



*See* Google Maps screenshots showing the estimated locations of the mobile computing device (*e.g.*, the estimated device locations shown above) in relation to the one or more alternate routes (*e.g.*, the alternate routes shown above).

201.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method comprising the step of, as the mobile computing device travels, (v) causing the mobile computing device to remove from the display on the map at least a portion of the one or more alternate routes previously displayed on the map, or at least a portion of the first route, or at least a portion of the one or more alternate routes previously displayed on the map and at least a portion of the first route.



*See* Google Maps screenshots showing the removal from the display on the map at least a portion of an alternate route previously displayed on the map in gray and annotated with "similar ETA".



*See* Google Maps screenshots showing the removal from the display on the map at least a portion of at least a portion of the first route as the smartphone travels along the first route.

202.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

### Count V – Infringement of United States Patent No. 10,996,071

203.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

204.    Google made, used, offered to sell access to, and sold access to Google Maps Products and Services.

205.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '071 patent.

206.    Claim 1 of the '071 patent provides as follows:

    1.    An electronic navigation method for a mobile computing device, the method comprising:

        receiving a starting location;

        receiving a destination location;

        determining a plurality of possible routes from the starting location to the destination location by performing a route computation between the starting location and the destination location using map data, the plurality of possible routes being in reference to the map data;

for each of the plurality of possible routes, determining a travel time to the destination location; and

as the mobile computing device travels along one of the plurality of possible routes,

(i) receiving a plurality of locations of the mobile computing device, the plurality of locations being derived from location information obtained by the mobile computing device, and

(ii) causing the mobile computing device to (a) display on a map generated using the map data the plurality of possible routes, (b) display the travel time to the destination for at least one of the plurality of possible routes along which the mobile computing device is traveling, (c) display on the map indications of the plurality of locations of the mobile computing device, (iii) (d) modify or remove at least one of the plurality of possible routes based on the map data and a subsequent location of the mobile computing device, and (e) display on the map an indication of the modification or the removal of the at least one of the possible routes.

*See* '071 patent, Claim 1.

207.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, receiving a starting location (*e.g.*, blue dot shown below).



*See* Google Maps screenshot showing a starting location associated with a mobile computing device (*e.g.*, the blue dot above) in reference to map data.

208.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, receiving a destination location.



*See* Google Maps screenshot showing a destination location (a location represented by "B" above) in reference to map data.

209.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, determining a plurality of possible routes (*e.g.*, the 2 hr 58 route, the 3 hr 51 min route, and the 3 hr 1 min route) from the starting location (*e.g.*, the location represented by the blue dot) to the destination location (*e.g.*, the location represented by the "B") by performing a route computation between the starting location and the destination location using map data, the plurality of possible routes being in reference to the map data.



*See* Google Maps screenshot showing a plurality of possible routes (*e.g.*, the 2 hr 58 route, the 3 hr 51 min route, and the 3 hr 1 min route) from the starting location (*e.g.,* the location represented by the blue dot) to the destination location (*e.g.,* the location represented by the "B") in reference to map data.

210.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, for each of the plurality of possible routes, (*e.g.,* the routes shown below) determining a travel time to the destination location (*e.g.*, 2 hours and 58 minutes;  3 hours and 51 minutes, and 3 hours and 1 minute).



*See* Google Maps screenshot showing a plurality of possible routes, (*e.g.*, the 2 hr 58 route, the 3 hr 51 min route, and the 3 hr 1 min route) in reference to their travel times (*e.g.*, 2 hours and 58 minutes; 3 hours and 51 minutes, and 3 hours and 1 minute) to the destination location.

211.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, as the mobile computing device travels along one of the plurality of possible routes (i) receiving a plurality of locations of the mobile computing device, the plurality of locations being derived from location information obtained by the mobile computing device.



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps receives location updates generated by the mobile device.

**About this app** →

Explore and navigate the world with confidence using Google Maps. Find the best routes with live traffic data and real-time GPS navigation for driving, walking, cycling, and public transport. Discover over 250 million businesses and places - from restaurants and shops to everyday essentials – with photos, reviews, and helpful information.



*See*

https://play.google.com/store/apps/details?id=com.google.android.apps.maps&hl=en_US (describing Google Maps' location determination based on "real time GPS navigation".)

212.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, as the mobile computing device travels along one of the plurality of possible routes (ii) causing the mobile computing device to (a) display on a map generated using the map data the plurality of possible routes(*e.g.*, the routes shown below).



*See* Google Maps screenshot showing that as the mobile computing device travels along one of the plurality of possible routes, (*e.g.*, the colored route) Google Maps displays the plurality of possible routes (*e.g.*, the routes shown above).

213.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, as the mobile computing device travels along one of the plurality of possible routes (*e.g.*, the colored route below)  (ii) causing the mobile computing device to (b) display the travel time (*e.g.*, "38 Min" below) to the destination for at least one of the plurality of possible routes along which the mobile computing device is traveling.



*See* Google Maps screenshot showing that as the mobile computing device travels along one of the plurality of possible routes, (*e.g.*, the colored route above) Google Maps displays the travel time (*e.g.*, "38 Min") to the destination for at least one of the plurality of possible routes along which the mobile computing device is traveling.

214.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, as the mobile computing device travels along one of the plurality of possible routes (*e.g.*, the colored route below)  (ii) causing the mobile computing device to (c) display on the map indications of the plurality of

locations of the mobile computing device (*e.g.*, the locations of the mobile device shown below).



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps displays indications of the plurality of locations of the mobile computing device (*e.g.*, the locations of the mobile device shown above).

**About this app**  →

Explore and navigate the world with confidence using Google Maps. Find the best routes with live traffic data and real-time GPS navigation for driving, walking, cycling, and public transport. Discover over 250 million businesses and places - from restaurants and shops to everyday essentials – with photos, reviews, and helpful information.



*See*

https://play.google.com/store/apps/details?id=com.google.android.apps.maps&hl=e
n_US (describing Google Maps' location determination based on "real time GPS
navigation.)

215.    In relation to the Google Maps Products and Services, Google practiced,
employed and provided an electronic navigation method for a mobile computing
device, the method comprising the step of, as the mobile computing device travels
along one of the plurality of possible routes (*e.g.*, the colored route below)  (ii) causing
the mobile computing device to (d) modify or remove at least one of the plurality of
possible routes (*e.g.*, the route in gray and annotated with "similar ETA") based on the
map data and a subsequent location of the mobile computing device.



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps remove at least one of the plurality of possible routes (*e.g.*, the route previously displayed on the map in gray and annotated with "similar ETA") based on the map data and a subsequent location of the mobile computing device (*e.g.*, when Google Maps detects that a mobile device is not traveling along a possible route).

216.    In relation to the Google Maps Products and Services, Google practiced, employed and provided an electronic navigation method for a mobile computing device, the method comprising the step of, as the mobile computing device travels along one of the plurality of possible routes (*e.g.*, the colored route below)  (ii) causing

the mobile computing device to (e) display on the map an indication of the modification or the removal of the at least one of the possible routes.



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps displays on the map an indication of the removal of the at least one of the possible routes (*e.g.,* the route previously displayed on the map in gray and annotated with "similar ETA").

217.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

## Count VI – Infringement of United States Patent No. 11,473,925

218.    Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

219.    Google made, used, offered to sell access to, and sold access to Google Maps Products and Services.

220.    Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '925 patent.

221.    Claim 1 of the ' patent provides as follows:

1. A computer program product of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to:

provide a graphical user interface (GUI) on a display of the mobile device;

enable a user of the mobile device to, using the GUI, specify a destination location; and

as the mobile device travels to the destination location,

(i) receive a first location update signal generated by a positioning device of the mobile device, the positioning device including a GPS receiver, and the first location update signal representing a first location of the mobile device at a first time,

(ii) automatically calculate, using map data, the destination location and at least the first location update, a first possible route of travel of the mobile device from the first location towards the destination location and a second possible route of travel of the mobile device from the first location towards the destination location, the first possible route of travel including a first roadway intersection and the second route of travel including the first roadway intersection,

(iii) cause the GUI to display a graphical representation of a map together with a graphical representation of the first possible route of travel and a graphical representation of the second possible route of travel on segments of roadways of the graphical representation of the map,

(iv) receive a second location update generated by the positioning device of the mobile device, the second location update representing a second location of the mobile device at a second time after the first time,

(v) automatically calculate, using the map data and at least the first location update and the second location update, a first estimated route of travel of the mobile device from the first location to the second location,

(vi) determine whether the first estimated route of travel includes the first roadway intersection, whether the first possible route of travel includes the second location, and whether the second possible route of travel includes the second location,

(vii) if the first estimated route of travel is determined to include the first roadway intersection, the first possible route of travel is determined to include the second location, and the second possible route of travel is determined to not include the second location, automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the first possible route of travel and automatically cause the GUI to no longer display the graphical representation of the second possible route of travel,

(viii) if the first estimated route of travel is determined to include the first roadway intersection, the first possible route of travel is determined to not include the second location, and the second possible route of travel is determined to include the second location, automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the second possible route

125

of travel and automatically cause the GUI to no longer display the graphical representation of the first possible route of travel,

(ix) automatically calculate, using map data, the destination location and at least the second location update, a third possible route of travel of the mobile device from the second location towards the destination location and a fourth possible route of travel of the mobile device from the second location towards the destination location, the second possible route of travel including a second roadway intersection and the third route of travel including the first roadway intersection,

(x) cause the GUI to display the graphical representation of the map together with a graphical representation of the third possible route of travel and a graphical representation of the fourth possible route of travel on segments of roadways of the graphical representation of the map,

(xi) receive a third location update generated by the positioning device of the mobile device, the third location update representing a third location of the mobile device at a third time after the second time,

(xii) automatically calculate, using the map data and at least the second location update and the third location update, a second estimated route of travel of the mobile device from the second location to the third location,

(xiii) determine whether the second estimated route of travel includes the second roadway intersection, whether the third possible route of travel includes the third location, and whether the fourth possible route of travel includes the third location,

(xiv) if the second estimated route of travel is determined to include the second roadway intersection, the third possible route of travel is determined to include the third location, and the

fourth possible route of travel is determined to not include the third location, automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the third possible route of travel and automatically cause the GUI to no longer display the graphical representation of the fourth possible route of travel,

(xv) if the second estimated route of travel is determined to include the second roadway intersection, the third possible route of travel is determined to not include the third location, and the fourth possible route of travel is determined to include the third location, automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the fourth possible route of travel and automatically cause the GUI to no longer display the graphical representation of the third possible route of travel.

*See* '925 patent, Claim 1.

222.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, (*e.g.*, as shown below) the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions (*e.g.*, instructions associated with the Google Maps mobile application) that when executed by at least one processor of the navigation system (e.g., a processor within a Google Pixel smartphone) cause the navigation system to, provide a graphical user interface (GUI) on a display of the

mobile device, (*e.g.,* a graphical user interface associated with the Google Maps mobile

application).



*See e.g.,* a Graphical User Interface (GUI) associated with the Google Maps mobile

application displaying multiple travel routes.

223.    Google made, used, sold, offered to sell and/or imported a computer

program product (*e.g.,* the Google Maps Mobile Application) of a navigation system for

dynamically calculating and displaying multiple travel routes for a mobile device and

for tracking the mobile device along the multiple travel routes, the navigation system

including the mobile device (*e.g.,* a Pixel smartphone) and one or more servers, the

computer program product comprising a non-transitory computer readable medium

including computer instructions (*e.g.,* instructions associated with the Google Maps

mobile application) that when executed by at least one processor of the navigation

system cause the navigation system to, enable a user of the mobile device to, using the GUI, specify a destination location.



*See* Google Maps screenshot showing that a user of the mobile device can use the GUI to specify a destination location (*e.g.*, "724 Periwinkle Ln.").

224.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel smartphone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the

destination location, (i) receive a first location update signal generated by a positioning device of the mobile device, the positioning device including a GPS receiver, and the first location update signal representing a first location of the mobile device at a first time.



*See e.g.*, Google Maps screenshot annotated with a red circle to show a first location of the mobile device at a first time.



*See e.g.*, screenshot showing that the Google Pixel 4 comprised a GPS receiver.

225.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel smartphone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (ii) automatically calculate, using map data, the destination location and at least the first location update, a first possible route of travel of the mobile device from the first location towards the destination location (*e.g.*, as shown below) and a second possible route of travel of the mobile device from the first location towards the destination location, (*e.g.*, as shown below) the first possible route of travel including a first roadway intersection and the second route of travel including the first roadway intersection (*e.g.*, as shown below).



*See e.g.*, Google Maps screenshot annotated with (a.) a red circle and the number "2" to show the destination location; (b.) a red circle and the number "1" to show the first location update; (c.) "3a" to show a first possible route of travel of the mobile device from the first location towards the destination location, which includes a first roadway intersection; "3b" to show a second possible route of travel of the mobile device from the first location towards the destination location, which includes a first roadway intersection.

226.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the

computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (iii) cause the GUI to display a graphical representation of a map together with a graphical representation of the first possible route of travel and a graphical representation of the second possible route of travel on segments of roadways of the graphical representation of the map.



*See e.g.,* Google Maps screenshot showing a GUI displaying a graphical representation of a map together with a graphical representation of the first possible route of travel (3a) and a graphical representation of the second possible route of travel (3b) on segments of roadways of the graphical representation of the map.

227.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (iv) receive a second location update generated by the positioning device of the mobile device, the second location update representing a second location of the mobile device at a second time after the first time.



*See e.g.*, Google Maps screenshot showing a GUI displaying a first location of the mobile device at first time.



*See e.g.*, Google Maps screenshot showing a GUI displaying a second location of the mobile device at a second time after the first time.

228.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (v) automatically calculate, using the map data and at least the first

135

location update and the second location update, a first estimated route of travel of the mobile device from the first location to the second location.



*See e.g.,* Google Maps screenshot showing a GUI displaying a first location of the mobile device at first time.



*See e.g.*, Google Maps screenshot showing a GUI displaying a second location of the mobile device, and a first estimated route of travel of the mobile device from the first location to the second location.

229.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel smartphone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (vi) determine whether the first estimated route of travel includes the first roadway intersection, (*e.g.*, the intersection at "Davis St." shown below) whether the first possible route of travel (*e.g.*, "3a" below) includes the second location, and whether the second possible route of travel (*e.g.*, "3b" below) includes the second location.



*See e.g.*, Google Maps screenshot showing a GUI displaying the first possible route of travel (3a) and the second possible route of travel (3b).



*See e.g.*, Google Maps screenshot demonstrating that Google Maps undertakes a determination of whether the first estimated route of travel includes the first roadway intersection, (*e.g.*, the intersection at "Davis St."), and whether the first possible route of travel (*e.g.*, the route of travel annotated with "4 min faster") includes the second location (*e.g.*, the location of the mobile device in the screenshot), and whether the second possible route of travel (*e.g.*, the route of travel annotated with "11 min") includes the second location.

230.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel smartphone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (vii) if the first estimated route of travel is determined to include the first roadway intersection, (*e.g.*, the roadway intersection including road "645" shown below) the first possible route of travel (*e.g.*, the possible route of travel shown in blue below) is determined to include the second location, (*e.g.*, the position of the mobile device in the right-most screenshot below) and the second possible route of travel (*e.g.*, the possible route of travel annotated with "4 min slower" below) is determined to not include the second location, automatically cause the GUI to continue

to display the graphical representation of the map together with the graphical representation of the first possible route of travel (*e.g.*, the possible route of travel shown in blue below) and automatically cause the GUI to no longer display the graphical representation of the second possible route of travel (*e.g.*, the possible route of travel annotated with "4 min slower" below).



*See e.g.* a series of two screenshots from the Google Maps mobile application displayed in the order they were recorded from left to right. The first (left) screenshot showing the GUI before the mobile device crosses the 645 intersection; the second (right) screenshot showing the mobile device at second position after crossing the crosses the 645 intersection, and also showing that (a) Google Maps determined that the estimated route of travel included the "645" intersection; (b) Google Maps determined that the first possible route of travel (*e.g.*, the blue path) included the second location (*e.g.*, the location of the mobile device in the right screenshot); (c) Google Maps determined that the second possible route of travel (*e.g.*, the possible route of travel shown in grey with the annotation "4 min slower" in the left screenshot) does not include the second location(*e.g.*, the location of the mobile device in the right screenshot); (d) Google Maps

automatically caused the GUI to continue to display the graphical representation of the map together with the graphical representation of the first possible route of travel (*e.g.*, the blue path which continues to be shown in the right screenshot); and (e) that Google Maps automatically caused the GUI to no longer display the graphical representation of the second possible route of travel, which was shown in the left screenshot but was no longer displayed in the right screenshot.

231.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (viii) if the first estimated route of travel (*e.g.*, the blue path in the left screenshot below) is determined to include the first roadway intersection, (*e.g.*, the intersection at the corner of "Doyle Ln. and "Northbourne Dr. shown below), the first possible route of travel is determined to not include the second location, (*e.g.*, the location of the mobile device shown in the right screenshot below) and the second possible route of travel (*e.g.*, the blue path in the right screenshot below) is determined to include the second location, automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the

second possible route of travel (*e.g.*, the blue path in the right screenshot below) and automatically cause the GUI to no longer display the graphical representation of the first possible route of travel (*e.g.*, the removal of the blue path shown in the left screenshot from the right screenshot, following the mobile device turning left on to "Northbourne Dr.").



*See e.g.* a series of two screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right. The first (left) screenshot showing the GUI before the mobile device reaches the intersection of "Doyle Ln. and "Northbourne Dr."; the second (right) screenshot showing the mobile device at a second position after turning left at the intersection of "Doyle Ln. and "Northbourne Dr.", and also showing that (a) Google Maps determined that the estimated route of travel included the intersection of "Doyle Ln. and "Northbourne Dr."; (b) Google Maps determined that the

first possible route of travel (*e.g.*, the blue path in the left screenshot) did not include the second location (*e.g.*, the location of the mobile device in the right screenshot); (c) Google Maps determined that the second possible route of travel (*e.g.*, the possible route of travel shown in grey with the annotation "3 min slower" in the left screenshot) included the second location(*e.g.*, the location of the mobile device in the right screenshot); (d) Google Maps automatically caused the GUI to continue to display the graphical representation of the map together with the graphical representation of the second possible route of travel (*e.g.*, the possible route of travel shown in grey with the annotation "4 min slower" in the left screenshot that continues to be displayed in blue on the right screenshot); and (e) that as shown in the right screenshot, Google Maps automatically caused the GUI to no longer display the grey route annotated with "3 min faster" in the left screenshot (*i.e.*, the claimed "first possible router of travel.")

232.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel smartphone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (ix) automatically calculate, using map data, the destination location (*e.g.*, the destination for all routes shown below) and at least the second

location update, (*e.g.*, the position of the mobile device as shown in the right screenshot below) a third possible route of travel of the mobile device from the second location towards the destination location (*e.g.*, the possible route of travel from the position of the mobile device in the right screenshot below, that comprises in part the possible route shown in grey that includes travel along road "645") and a fourth possible route of travel of the mobile device from the second location towards the destination location, (*e.g.*, the possible route of travel from the position of the mobile device in the right screenshot below, that is labeled with "23 min") the second possible route of travel (*e.g.*, the possible route of travel shown in grey with the annotation "3 min slower" in the left screenshot) including a second roadway intersection (*e.g.*, the roadway intersection where the path shown in blue in the right screenshot intersects with road "645") and the third route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the right screenshot below, that comprises in part the possible route shown in grey that includes travel along road "645") including the first roadway intersection, (e.g., the intersection of "Doyle Ln. and "Northbourne Dr.").



*See e.g.* a series of two screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right, showing the elements of the claim as explained more fully above.

233.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (x) cause the GUI to display the graphical representation of the

map together with a graphical representation of the third possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the right screenshot below, that comprises in part the possible route shown in grey that includes travel along road "645") and a graphical representation of the fourth possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the right screenshot below, that is labeled with "23 min") on segments of roadways of the graphical representation of the map.



*See e.g.* a series of two screenshots from the Google Maps mobile application displayed in the order they were recorded from left to right, showing the elements of the claim as explained more fully above.

234.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for

dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (xi) receive a third location update (*e.g.*, a third GPS update) generated by the positioning device of the mobile device, the third location update representing a third location (*e.g.*, the locations of the mobile device shown in the middle and right screenshots below) of the mobile device at a third time after the second time (*e.g.*, the time when the screenshot on the left was taken).



*See e.g.* a series of three screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right, showing. The right two screenshots show examples of the claimed third position based on GPS updates

235.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (xii) automatically calculate, using the map data and at least the second location update and the third location update, a second estimated route of travel of the mobile device from the second location to the third location (*e.g.*, the highlighted routes from the location of the mobile device in the left screenshot to either of the right screenshot).



*See e.g.* a series of two screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right. The right screenshot showing an example of the claimed third position based on GPS updates, and also showing a second estimated route of travel of the mobile device from the second location (*e.g.*, the location of the mobile device in the left screenshot) to the third location (*e.g.*, the location of the mobile device in the right screenshot).

236.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium

including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (xiii) determine whether the second estimated route of travel includes the second roadway intersection, (*e.g.*, the intersection of road "645" and "Northbourne Dr.", which is visible in both screenshots below and which the mobile device has just driven past in the right screenshot below) whether the third possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot below, that comprises in part the possible route shown in grey that includes travel along road "645") includes the third location, (*e.g.*, the location of the mobile device in the right screenshot below) and whether the fourth possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot below that is labeled with "23 min") includes the third location (*e.g.*, the location of the mobile device in the right screenshot below).



*See e.g.* a series of two screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right, showing the elements of the claim as explained more fully above.

237.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (xiv) if the second estimated route of travel (*e.g.*, the highlighted

151

routes from the location of the mobile device in the left screenshot to the location of the

mobile device in the middle screenshot below) is determined to include the second

roadway intersection, (*e.g.*, the intersection of road "286" and "Rugby Rd.) the third

possible route of travel (*e.g.*, the possible route of travel shown in grey in the middle

screenshot below) is determined to include the third location (*e.g.*, the position of the

mobile device in the right screenshot below), and the fourth possible route of travel

(*e.g.*, the possible route of travel along "Rugby Rd." shown in blue in the middle

screenshot below) is determined to not include the third location, (*e.g.*, the position of

the mobile device in the right screenshot below),  automatically cause the GUI to

continue to display the graphical representation of the map together with the graphical

representation of the third possible route of travel and automatically cause the GUI to

no longer display the graphical representation of the fourth possible route of travel.



*See e.g.* a series of three screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right, showing the elements of the claim as explained more fully above, and further showing the Google Maps GUI continuing to display the the third possible route of travel (*e.g.*, the possible route of travel shown in grey in the middle screenshot above, which continues to be shown in blue in the right screenshot above) and the Google Maps GUI no longer display the graphical representation of the fourth possible route of travel (*e.g.*, the possible route of travel along "Rugby Rd." shown in blue in the middle screenshot below, which is no longer shown in the right most screenshot above.)

238.    Google made, used, sold, offered to sell and/or imported a computer program product (*e.g.*, the Google Maps Mobile Application) of a navigation system for dynamically calculating and displaying multiple travel routes for a mobile device and for tracking the mobile device along the multiple travel routes, the navigation system including the mobile device (*e.g.*, a Pixel mobile phone) and one or more servers, the computer program product comprising a non-transitory computer readable medium including computer instructions that when executed by at least one processor of the navigation system cause the navigation system to, as the mobile device travels to the destination location, (xv) if the second estimated route of travel (*e.g.*, the highlighted routes from the location of the mobile device in the left screenshot to the location of the mobile device in the right screenshot below) is determined to include the second roadway intersection, (*e.g.*, the intersection of road "645" and "Northbourne Dr.", which is visible in both screenshots below and which the mobile device has just driven past in

the right screenshot below) the third possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot below, that comprises in part the possible route shown in grey that includes travel along road "645") is determined to not include the third location, (*e.g.*, the position of the mobile device as shown in the right screenshot below) and the fourth possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot below that is labeled with "23 min") is determined to include the third location, (*e.g.*, the position of the mobile device as shown in the right screenshot below) automatically cause the GUI to continue to display the graphical representation of the map together with the graphical representation of the fourth possible route of travel and automatically cause the GUI to no longer display the graphical representation of the third possible route of travel.



*See e.g.* a series of two screenshots from the Google Maps Mobile Application displayed in the order they were recorded from left to right, showing the elements of the claim as explained more fully above, and further showing the Google Maps GUI continuing to display the fourth possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot above that is labeled with "23 min" that continues to be shown in blue in the right screenshot above) and that the Google Maps GUI no longer display the graphical representation of the third possible route of travel (*e.g.*, the possible route of travel from the position of the mobile device in the left screenshot above, that comprises in part the possible route shown in grey that includes travel along road "645", which is no longer shown in the right screenshot above.)

239.     Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

### Count VII – Infringement of United States Patent No. 11,619,513

240.     Bluestone repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs, as set forth above.

241.     Google made, used, offered to sell access to, and sold access to Google Maps Products and Services.

242.     Google directly infringed, literally and/or under the doctrine of equivalents, at least claim 12 of the '513 patent.

243.     Claim 12 of the '513 patent provides as follows:

> 12. A computer-implemented method for calculating and displaying routes of travel for mobile devices, the method comprising:

155

receiving first data generated by a first mobile device, the first data representing a destination location, and

as the first mobile device travels to the destination location,

(i) receiving second data generated by the first mobile device, the second data comprising a plurality of real-time location updates, each of the plurality of real-time location updates representing a location of the first mobile device at a particular time,

(ii) calculating a route of travel of the first mobile device along a routable network infrastructure including roadways using map data, the first data, and at least a portion of the second data, the map data including map data for the routable network infrastructure,

(iii) transmitting to a second mobile device third data representing points along the route of travel of the first mobile device,

(iv) providing, using the map data and the third data representing at least a portion of the points along the route of travel of the first mobile device, a first graphical user interface (GUI) on a display of the second mobile device, the first GUI including a graphical representation of a first map, the graphical representation of the first map showing the routable network infrastructure and a first representation of the third data along segments of roadways of the routable network infrastructure, such that a user of the second mobile device can visually track on the display of the second mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination location, and

156

(v) providing, using the map data and at least a portion of the second data, a second GUI on a display of the first mobile device, the second GUI including a graphical representation of a second map, the graphical representation of the second map showing the routable network infrastructure and a representation of the route of travel of the first mobile device to the destination location on segments of roadways of the routable network infrastructure such that a user of the first mobile device can visually track on the display of the first mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination location.

*See* '513 patent, Claim 1.

244.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a computer-implemented method for calculating and displaying routes of travel for mobile devices (*e.g.*, mobile devices with the Google Map Mobile Application installed), the method comprising the step of, receiving first data generated by a first mobile device, the first data representing a destination location (*e.g.*, the location indicated by the "B" shown below.



*See* Google Maps screenshot showing a destination location (indicated by "B" above) in reference to map data.

245.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a computer-implemented method for calculating and displaying routes of travel for mobile devices, (*e.g.*, mobile devices with the Google Map Mobile Application installed), the method comprising the step of, as the first mobile device travels to the destination location, (i) receiving second data (*e.g.*, "real time GPS" data) generated by the first mobile device, the second data comprising a plurality of real-time location updates, each of the plurality of real-time location updates representing a location of the first mobile device at a particular time.



*See* Google Maps screenshots showing that as a mobile device travels to the destination location, Google Maps receives location updates generated by the mobile device (i.e., the claimed "plurality of real-time location updates").

**About this app** →

Explore and navigate the world with confidence using Google Maps. Find the best routes with live traffic data and real-time GPS navigation for driving, walking, cycling, and public transport. Discover over 250 million businesses and places - from restaurants and shops to everyday essentials – with photos, reviews, and helpful information.



*See*

https://play.google.com/store/apps/details?id=com.google.android.apps.maps&hl=e
n_US (describing Google Maps' location determination based on "real time GPS
navigation".)

246.    In relation to the Google Maps Products and Services, Google practiced,
employed and provided a computer-implemented method for calculating and
displaying routes of travel for mobile devices, (*e.g.*, mobile devices with the Google Map
Mobile Application installed), comprising the step of, as the first mobile device travels
to the destination location, (ii) calculating a route of travel (*e.g.*, the routes shown below)
of the first mobile device along a routable network infrastructure including roadways
(*e.g.*, the roadways shown below) using map data, the first data, and at least a portion of
the second data, the map data including map data for the routable network
infrastructure.



*See* Google Maps screenshot showing a route of travel (*e.g.*, the routes shown above) along a routable network infrastructure including roadways (*e.g.*, the roadways shown above) using map data concerning those roadways, the destination location, and the mobile device location.

247.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a computer-implemented method for calculating and displaying routes of travel for mobile devices, (*e.g.*, mobile devices with the Google Map Mobile Application installed), the method comprising the step of, as the first mobile device travels to the destination location, (*e.g.*, 1234 E Lancaster Ave. shown below) (iii) transmitting to a second mobile device third data representing points along the route of travel of the first mobile device (*e.g.*, the points represented by "B" below).



*See* Google Maps screenshot showing as the as the first mobile device (*e.g.*, the mobile device at "B" above) travels to the destination location (*e.g.*, "1234 E Lancaster Ave"), Google Maps transmits to the second mobile device (*e.g.*, the mobile device from which the screenshots above were taken) third data representing points along the route of travel of the first mobile device (*e.g.*, the mobile device at "B" above).

248.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a computer-implemented method for calculating and displaying routes of travel for mobile devices (*e.g.*, mobile devices with the Google Map Mobile Application installed), the method comprising the step of, as the first mobile device travels to the destination location (*e.g.*, "1234 E Lancaster Ave"), (iv) providing, using the map data (*e.g.*, the data used to display the roadways and other information in

the map images below) and the third data representing at least a portion of the points along the route of travel of the first mobile device (*e.g.*, the data representing the completed/past portion of the route shown below), a first graphical user interface (GUI) on a display of the second mobile device, (*e.g.*, the mobile device from which these screenshots below were taken) the first GUI including a graphical representation of a first map, (*e.g.*, the  map image shown in the application interface below) the graphical representation of the first map showing the routable network infrastructure and a first representation of the third data along segments of roadways of the routable network infrastructure, such that a user of the second mobile device can visually track on the display of the second mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination location.



*See* Google Maps screenshot showing that a user of the second mobile device can visually track on the display of the second mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination location.

249.    In relation to the Google Maps Products and Services, Google practiced, employed and provided a computer-implemented method for calculating and displaying routes of travel for mobile devices (*e.g.*, mobile devices with the Google Map Mobile Application installed), the method comprising the step of, as the first mobile device travels to the destination location (*e.g.*, "1234 E Lancaster Ave"), (v) providing, using the map data and at least a portion of the second data, a second GUI (*e.g.*, the Google Maps application interface on  the mobile device at "B" below) on a display of

the first mobile device (*e.g.*, the mobile device at "B" below), the second GUI including a graphical representation of a second map, the graphical representation of the second map showing the routable network infrastructure and a representation of the route of travel of the first mobile device to the destination location on segments of roadways of the routable network infrastructure such that a user of the first mobile device can visually track on the display of the first mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination location.



*See* Google Maps screenshots showing that a user of the second mobile device can visually track on the display of the second mobile device the route of travel of the first mobile device (*e.g.*, the mobile device at "B" below).



*See* Google Maps screenshots showing a second GUI (*e.g.*, the Google Maps application

interface on the mobile device "B" represented in the first set of screenshots above) on a

display of the first mobile device, (*e.g.*, the mobile device "B" represented in the first set

of screenshots above) the second GUI including a graphical representation of a second

map (*e.g.* the map in the application interface shown in the screenshots immediately

above), the graphical representation of the second map showing the routable network

infrastructure and a representation of the route of travel of the first mobile device (*e.g.*,

the mobile device "B" represented in the first set of screenshots above) to the

destination location (*e.g.* "1234 E Lancaster Ave") on segments of roadways of the routable network infrastructure such that a user of the first mobile device can visually track on the display of the first mobile device the route of travel of the first mobile device along the segments of roadways of the routable network infrastructure as the first mobile device travels to the destination.

250.    Bluestone has been damaged by the direct infringement of Google and has suffered irreparable harm and damages as a result of this infringement.

## JURY DEMANDED

251.    Pursuant to Federal Rule of Civil Procedure 38(b), Bluestone hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Bluestone respectfully requests this Court to enter judgment in Bluestone's favor and against Google as follows:

a.  finding that Google has infringed one or more claims of the '341 patent;

b.  finding that Google has infringed one or more claims of the '337 patent;

c.  finding that Google has infringed one or more claims of the '208 patent;

d.  finding that Google has infringed one or more claims of the '608 patent;

e.  finding that Google has infringed one or more claims of the '071 patent;

f.  finding that Google has infringed one or more claims of the '925 patent;

g.  finding that Google has infringed one or more claims of the '513 patent;

h.  awarding Bluestone damages under 35 U.S.C. § 284, or otherwise permitted by law;

i.   awarding Bluestone pre-judgment and post-judgment interest on the damages award and costs;

j.   awarding cost of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

k.   awarding such other costs and further relief that the Court determines to be just and equitable.

Dated: December 12, 2025                    Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
111 Congress Ave, Suite 500
Austin, Texas 78701
Tel/Fax: (512) 865-7950

Oded Burger* (NY State Bar No. 4910808)
oburger@daignaultiyer.com
**DAIGNAULT IYER LLP**
8229 Boone Boulevard - Suite 450
Vienna, VA 22182
*Not admitted to practice in Virginia

Attorneys for *Bluestone Ventures Inc.*