PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

BLUESTONE VENTURES INC,

*Plaintiff*,

v.

GOOGLE LLC,

*Defendant*.

Case No. 7:25-CV-00569-DC-DTG

Jury Trial Demanded

[redacted]

# DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................1
II. BACKGROUND ....................1
A. Plaintiff's Infringement Allegations ....................1
B. Google's Relevant Witnesses and Documents are In NDCA, or Are Closer to NDCA than WDTX ....................2
C. Bluestone Has No Discernible Connection to WDTX ....................5
D. Relevant Nonparty Witnesses and Evidence are Primarily in California ....................6
III. LEGAL STANDARD ....................7
IV. ARGUMENT ....................8
A. The Cost of Attendance for Willing Witnesses Strongly Favors Transfer ....................8
B. The Availability of Compulsory Process Strongly Favors Transfer ....................11
C. The Relevant Sources of Proof Strongly Favor Transfer ....................12
D. Local Interests Strongly Favor Transfer ....................13
E. Practical Considerations Also Favor Transfer ....................14
F. The Remaining Factors Are Neutral ....................15
1. The court congestion factor should be accorded no weight ....................15
2. The remaining public interest factors are neutral ....................15
V. CONCLUSION ....................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*3D Surfaces, LLC v. Dell Techs. Inc.*,
No. 21-CV-01107-ADA, 2022 WL 3695483 (W.D. Tex. Aug. 25, 2022)....................13

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)....................11, 15

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020)....................8

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021)....................15

*In re Apple Inc.*,
No. 2022-137, 2022 WL 1676400 (Fed. Cir. May 26, 2022)....................13

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014)....................11, 12

*In re Apple, Inc.*,
979 F.3d 1332 (Fed. Cir. 2020)....................13

*In re Chamber of Com. of United State of Am.*,
105 F.4th 297 (5th Cir. 2024)....................13

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024)....................9

*Digital Reg of Tex. LLC v. Adobe Sys. Inc.*,
No. 6:11-cv-305, 2012 WL 12895348 (E.D. Tex. Mar. 28, 2012)....................10

*In re DISH Network LLC*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)....................11

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)....................8, 10, 12

*In re Google LLC*,
58 F.4th 1379 (Fed. Cir. 2023)....................15

*In re Google LLC*,
No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021)....................11, 14

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ....................12

*In re Google, LLC*,
Case. No. 25-40788, slip op. 4, Dkt. No. 60-1 (5th Cir. Apr. 7, 2026) ....................15

*In re Hoffmann-La Roche Inc.*,
587 F.3d 1333 (Fed. Cir. 2009)....................13, 14

*In re HP Inc.*,
826 F. App'x 899 (Fed. Cir. 2020) ....................8

*In re Hulu*, No. 2021-142, 2021 WL 3278194 (Fed. Cir. 2021)....................12

*In re Juniper Networks, Inc.*,
14 F.4th 1313 (Fed. Cir. 2021) ....................15

*In re Juniper Networks, Inc.*,
No. 2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021)....................8

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)....................1, 8

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................9, 12

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) ....................10, 13

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014)....................15

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)....................15

*In re VirtaMove, Corp.*,
No. 2025-130, 2025 WL 2618803 (Fed. Cir. Sept. 11, 2025) ....................11

*VLSI Tech. LLC v. Intel Corp.*,
No. 6:19-cv-00254-ADA, 2019 WL 8013949 (W.D. Tex. Oct. 7, 2019)....................13

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ....................7, 10

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ....................7, 9, 10, 15

*WAG Acquisition, L.L.C. v. Google LLC*,
No. W-21-CV-00816-ADA, 2022 WL 9569437 (W.D. Tex. Oct. 5, 2022)..............................8

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) .........................................................................................................1, 7, 9, 16

# I. INTRODUCTION

Defendant Google LLC ("Google") respectfully moves pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California ("NDCA"), which is the clearly more convenient venue for this dispute.

NDCA is the center of gravity of this dispute. The relevant Google witnesses are in NDCA, Seattle, or Sydney—not Texas. Similarly, their teams are overwhelmingly in NDCA, Seattle, or Sydney; none of their teams is in Texas. Google has identified no engineer with responsibility over the accused functionality who is based in Texas. The relevant technical documents also are created and maintained in NDCA, nearby in Seattle, or in Sydney. Additionally, key third-party witnesses are in California, rather than Texas.

The Western District of Texas ("WDTX"), by contrast, has no apparent connection to this dispute. The likely witnesses with knowledge of the accused functionalities are not located here. Plaintiff, a Virginia-based non-practicing entity, has no discernible ties to WDTX. The Asserted Patents were developed (and apparently commercialized) in California, rather than in WDTX. Given WDTX's lack of connection to this case as compared to NDCA's deep connection, it is no surprise that NDCA has much stronger local interests in this suit's resolution than does WDTX.

Each of the § 1404 factors strongly favors transfer or is neutral, while none weighs against transfer. This case should be transferred to NDCA. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (directing transfer as "most witnesses and evidence [were] closer to the transferee venue with few or no convenience factors favoring the [transferor] venue").

# II. BACKGROUND

## A. Plaintiff's Infringement Allegations

Plaintiff Bluestone Ventures Inc. ("Bluestone") alleges that Google has infringed seven patents by making and providing users with Google Maps, which is available on various

platforms.[1] Compl. ¶ 6. Bluestone alleges that its patents cover, and that Google Maps allegedly practices, the following functionalities: (a) "Dynamic Route Computation Using Map Data" (*id.* at ¶¶ 21–31); (b) "Predictive Positioning Between Location Updates" (*id.* at ¶¶ 32–41); (c) "Multiple Route Alternatives with Travel Time Estimates" (*id.* at ¶¶ 42–48); (d) "Route Optimization Preferences" (*id.* at ¶¶ 48–51); and (e) "Real-Time Route Sharing Between Devices" (*id.* at ¶¶ 52–56) (together, the "Accused Functionalities").

The Asserted Patents issued between 2017 and 2023, *see* Compl., ¶¶ 62, 70, 75, 83, 104, 134, and expired by April 10, 2023—twenty years from the earliest non-provisional priority date, *see e.g.*, Radsch Decl., ¶¶ 2–9. Thus, the alleged infringement period in this case is 2017 to 2023.

### B. Google's Relevant Witnesses and Documents are In NDCA, or Are Closer to NDCA than WDTX

Google has been headquartered in NDCA since 1998. Three of the Google engineers primarily responsible for the Accused Functionalities are based in Google's Mountain View or San Francisco, CA offices (in NDCA); another three are based in Seattle, Washington; and one is based in Sydney, Australia. Mazniker Decl. ¶ 2; Huang Decl. ¶ 2; Jones Decl. ¶ 2; Rubin Decl. ¶ 2; Miles Decl. ¶ 2; Hands Decl. ¶ 2; Martin Decl. ¶ 2. Because these individuals are responsible for the Accused Functionalities, they are Google's relevant witnesses. Moreover, their teams are almost entirely located in the Bay Area, CA (in NDCA), and Seattle, WA. Mazniker Decl. ¶ 4; Huang Decl. ¶ 3; Jones Decl. ¶ 6; Rubin Decl. ¶ 4; Hands Decl. ¶ 4; Martin Decl. ¶ 4.

Specifically, Google's relevant witnesses are:

- **Boris Mazniker** (Director of Engineering, [redacted] Google Maps) [redacted],

[1] The "Asserted Patents" in this case are U.S. Patent Nos. 9,746,341; 10,274,337; 10,551,208; 10,677,608; 10,996,071; 11,473,925; and 11,619,513.

[redacted] Mazniker Decl. ¶¶ 2–3. Mr. Mazniker is based in Mountain View, CA. *Id.* at ¶ 2. [redacted]. *Id.* at ¶ 4. As noted above, Bluestone's allegations focus on how Google Maps displays routes and alternate routes, Compl., ¶¶ 42–48, and other user interface display aspects of Google Maps, *id.*

- **William Martin** (Software Engineer, [redacted] Google Maps) [redacted]. Martin Decl. ¶ 3. Mr. Martin is based in San Francisco, CA. *Id.* at ¶ 2. [redacted] *Id.* at ¶ 4. As noted above, Bluestone's allegations also focus on real-time route sharing between devices. Compl., ¶¶ 52–56.
- **Boahua Huang** (Software Engineer, [redacted], Google Maps) [redacted] which the Complaint accuses of practicing certain limitations but incorrectly refers to as "Google Maps API" (*see* Compl. ¶ 160).[2] Huang Decl. ¶ 3. Ms. Huang is based in, [redacted], Mountain View, CA. *Id.* at ¶¶ 2, 3.
- **Michael Cameron Jones** (Engineering Manager III, [redacted], Google Maps) [redacted][3] Jones Decl. ¶¶ 2–4. Mr. Jones is located in Seattle, WA. *Id.* at ¶ 2. [redacted]

[2] As of March 1, 2026, [redacted] Huang Decl. ¶ 3

[3] [redacted] wo years after the Asserted Patents' 2023 expiration date. Jones Decl. ¶ 5.

[redacted] *Id*. at ¶ 6. The Complaint's allegations focus on "Dynamic Route Computation Using Map Data" (Compl., ¶¶ 21–31), as well as "Route Optimization Preferences" (*id.* at ¶¶ 48–51).

- **Brent Hands** (Principal Software Engineer, [redacted] Google Maps) [redacted] Hands Decl. ¶¶ 2–4. Mr. Hands is based in Seattle, WA. *Id*. at ¶ 2. [redacted] *Id*. at ¶ 4. As noted above, the Complaint allegations focus on such features as "Dynamic Route Computation Using Map Data" (Compl., ¶¶ 21–31), "Predictive Positioning Between Location Updates" (*id.* at ¶¶ 32–41), "Multiple Route Alternatives with Travel Time Estimates" (*id.* at ¶¶ 42–48), and "Real-Time Route Sharing Between Devices" (*id.* at ¶¶ 52–56).
- **Izaak Rubin** (Staff Software Engineering Manager, [redacted], Google Maps) [redacted] Rubin Decl. ¶¶ 2–3. [redacted] *Id*. at ¶ 4. As noted above, the Complaint allegations focus on "Dynamic Route Computation Using Map Data" (Compl., at ¶¶ 21–31), "Multiple Route Alternatives with Travel Time Estimates" (*id.* at ¶¶ 42–48), and "Real-Time Route

Sharing Between Devices" (*id.* at ¶¶ 52–56).

- **Stuart Miles** (Senior Technical Lead, [redacted] Google Maps) [redacted] Miles Decl. ¶¶ 2–3. [redacted] *Id.* at ¶ 4. As noted above, the Complaint allegations focus on "Predictive Positioning Between Location Updates" (Compl., at ¶¶ 32–41) and "Route Optimization Preferences" (*id.* at ¶¶ 48–51).

Google is unaware of any Google employee who is a relevant witness—or who had any responsibility for the design, development, or implementation of the Accused Functionalities—who is located in WDTX, or elsewhere in Texas.

As a matter of practice, technical documents regarding Google's products and services are created and maintained by the employees working on those products and services. Here, those engineers are based primarily in NDCA and nearby Seattle, and to a lesser extent Sydney. Mazniker Decl. ¶ 6; Huang Decl. ¶ 5; Jones Decl. ¶ 8; Hands Decl. ¶ 4; Rubin Decl. ¶ 6; Miles Decl. ¶ 6; Martin Decl. ¶ 7.

### C. <u>Bluestone Has No Discernible Connection to WDTX</u>

Bluestone appears to have no presence in or connection to WDTX. It is registered to do business in Virginia and appears to engage solely in patent assertion. Radsch Decl., Ex. 8. It appears not to be registered to do business in Texas. To the extent that Bluestone has any employees at all, none appear to be located in WDTX. Bluestone was not involved in the development of the purported inventions of the Asserted Patents—rather, it acquired the patent family years later. *Id.*, Ex. 9. Moreover, Bluestone's Complaint does not identify any relevant

witnesses, documents, or evidence in Texas, let alone WDTX. *See generally* Compl.

### D. Relevant Nonparty Witnesses and Evidence are Primarily in California

The purported inventions of the Asserted Patents were developed in California, by inventors living in California, while working for a California-headquartered company, Networks in Motion. *See* Radsch Decl., Ex. 10 (assignment of priority application from named inventors to Networks in Motion, identifying California residences for each of the named inventors and Networks in Motion). Today, most relevant witnesses and sources of proof remain in California, including two of the four named inventors. *Id.*, Exs. 11–12. The other two named inventors appear to reside in Florida, outside the subpoena power of either this Court or NDCA.

Based on Google's investigation to date, the following relevant nonparty witnesses are in California and subject to compulsory process in NDCA but not WDTX:

- **Arun Yarlagadda** and **Stephen Petilli**, named inventors of the Asserted Patents, both appear to reside in California. *Id.*, Exs. 11–12. Their documents and testimony will be important to understanding the nature and origin of the alleged inventions, the state of the art, alleged improvements over the prior art, non-infringing alternatives, and commercialization of the alleged inventions.
- **Doug Antone,** president and CEO of Networks in Motion (the original assignee of the asserted patent family), also appears to reside in California. *Id.*, Ex. 13. His documents and testimony will be relevant to issues such as licensing and damages, commercialization of the purported inventions, and marking or lack thereof.
- **Uber**, which is headquartered in San Francisco, CA, was sued by Bluestone on related patents. *Id.*, Exs. 14–15. Uber will have important documentary and testimonial evidence (a) for Google's defenses of license and release, and lack of marking; (b) for

rebutting allegations of infringement; and (c) about damages.

- **Pioneer Electronics,** which is headquartered in Torrance, CA, commercialized a navigation product, AVIC-9DVD, which qualifies as invalidating prior art to the Asserted Patents. *Id.*, Exs. 16–17. Pioneer Electronics' documents and testimony will be relevant to invalidity and damages (e.g., apportionment).
- **American Honda**, headquartered in Torrance, CA, developed a "Honda Navigation System" that also qualifies as invalidating prior art. *Id.*, Exs. 18–19. Its documents and testimony will be relevant to invalidity and damages (e.g., apportionment).

## III. LEGAL STANDARD

A defendant is entitled to transfer under 28 U.S.C. § 1404(a) if it shows (1) that the suit "might have been brought" in the transferee district and (2) the "transferee venue is clearly more convenient" than the district in which suit was filed. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-15 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"). In determining relative "convenience," courts weigh the "private" and "public" interest factors. *Id.* at 315.

The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted) ("*Volkswagen I*"). The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* The "convenience of the witnesses is probably the single most important" factor. *In re Apple Inc.*, 818

F. App'x 1001, 1003 (Fed. Cir. 2020) (citation omitted) ("*Apple I*"). On balance, courts should look to where the action's "center of gravity" is. *In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021). The transferee venue is clearly more convenient when, as here, it is the defendant's home and the plaintiff has no ties to the transferor forum. *See In re HP Inc.*, 826 F. App'x 899, 904 (Fed. Cir. 2020).

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff," as is the case here, "the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198.

## IV. ARGUMENT

The Court should transfer this action to NDCA, which is the clearly more convenient venue for this action and the "center of gravity" here.

As a preliminary matter, this case could have been brought in NDCA, where Google is headquartered and where the design and development of the Accused Functionalities primarily took place. *See, e.g.*, *WAG Acquisition, L.L.C. v. Google LLC*, No. W-21-CV-00816-ADA, 2022 WL 9569437, at *3 (W.D. Tex. Oct. 5, 2022) (transferring action from WDTX to NDCA partly because "Google's headquarters are in the NDCA" and "venue would have been proper in the NDCA had the suit originally been filed there"). Accordingly, the transfer analysis turns on weighing the private and public interest factors, which strongly favor transfer.

### A. The Cost of Attendance for Willing Witnesses Strongly Favors Transfer

The willing witnesses private-interest factor strongly favors transfer: every identified willing witness resides in NDCA or closer to NDCA than to WDTX, while none is in WDTX.

The convenience of witnesses is "probably the single most important factor in [the] transfer analysis." *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Courts "must consider" the convenience of possible party witnesses. *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1379 (Fed. Cir.

2021). The Fifth Circuit uses the distance that a witness must travel to a particular forum as a proxy for cost and inconvenience. *See Volkswagen II*, 545 F.3d at 317 ("[A]dditional distance means additional travel time," which "increases the probability for meal and lodging expenses" and "overnight stays.") (internal quotation marks omitted); *In re Clarke*, 94 F.4th 502, 514 & n.20 (5th Cir. 2024) (recognizing the "external costs on witnesses"). Thus, "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317 (internal quotation marks omitted).

This factor strongly favors transfer to NDCA, which is far more convenient for all relevant willing witnesses. As detailed above, three of Google's relevant witnesses, who are responsible for many of the accused features, are in NDCA; another three are in Seattle, Washington; and one is in Sydney, Australia. *Supra* § II.B. These engineers' testimony will be central to at least noninfringement, noninfringing alternatives, and damages issues, such as apportionment.

For the likely witnesses already in NDCA, "it is more convenient [] to testify at home." *See Volkswagen II*, 545 F.3d at 317; *see* Jones Decl. ¶ 6 (location of Google team members); Mazniker Decl. ¶¶ 3–4 (same); Martin Decl. ¶ 4 (same); Huang Decl. ¶ 3–4 (same); Hands Decl. ¶ 4 (same). Traveling between Midland/Odessa and San Francisco requires at least five hours of travel each way. Radsch Decl., ¶¶ 22–23. Long travel time means witnesses will need to stay in Midland/Odessa overnight if they were to testify at trial, which would significantly disrupt their professional and personal commitments while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. If this case were transferred to NDCA, many relevant Google witnesses could testify "at home," or at least within "30 minutes [to] an hour" of where they work, as opposed to multiple-days' travel. *Volkswagen I*, 371 F.3d at 205; *see* Radsch Decl. ¶ 24.

For the Google witnesses in Seattle and Australia, NDCA is significantly closer and would require less travel time. Radsch Decl., ¶¶ 25–28. For those in Seattle, travel to NDCA would take about two hours—less than half the minimum of five hours it would take to travel to WDTX. *Id.* at ¶¶ 25–26; *see Volkswagen II*, 545 F.3d at 317. Similarly, it would take about thirteen hours to fly from Sydney to NDCA, but over twenty hours to fly from Sydney to WDTX. Radsch Decl., ¶¶ 27–28. Moreover, there are many more direct flights from Seattle and Sydney to NDCA—in fact, there are zero direct flights from either Seattle or Sydney to Midland, Texas—making NDCA more convenient for all of Google's likely witnesses. *Id.*, Exs. 23–26; *see Digital Reg of Tex. LLC v. Adobe Sys. Inc.*, No. 6:11-cv-305, 2012 WL 12895348, at *2 (E.D. Tex. Mar. 28, 2012) ("[T]he existence or non-existence of direct flights can impact the analysis of travel time."); *see also In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (noting that witnesses in California and abroad would have to travel thousands of extra miles if the case remained in Texas, and holding that California was "clearly more convenient" than WDTX for witnesses abroad).

None of Google's relevant witnesses is located in Texas, let alone WDTX. As detailed in the accompanying declarations, none of the engineers who work on the accused functionalities is based in Texas either. *See* Jones Decl. ¶ 6 (location of Google team members); Mazniker Decl. ¶ 5 (same); Martin Decl. ¶ 6 (same); Rubin Decl. ¶ 4 (same); Miles Decl. ¶ 4 (same); Huang Decl. ¶ 3 (same); Hands Decl. ¶¶ 4–5 (same). And, while Google's witnesses are the most relevant to the transfer analysis, *Genentech*, 566 F.3d at 1345, Plaintiff also appears to have no relevant witnesses in WDTX, *see* Radsch Decl., Ex. 8.

When, like here, "there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

All of the likely witnesses in this case are either in NDCA or would find it more convenient to testify there, while none resides in WDTX or would find it more convenient to testify here. Witness convenience, the most important factor, overwhelmingly favors transfer. *In re VirtaMove, Corp.*, No. 2025-130, 2025 WL 2618803, at *1 (Fed. Cir. Sept. 11, 2025) (holding transfer warranted when it "would allow a significant number of witnesses to testify near home" rather than "require all witnesses travel a significant distance"); *Google*, 2021 WL 4427899, at *4 (same).

### B. <u>The Availability of Compulsory Process Strongly Favors Transfer</u>

The compulsory process private-interest factor also strongly favors transfer because an NDCA court can subpoena non-parties who are likely to be witnesses, while WDTX cannot.

A court's ability to compel testimony through its subpoena power is an "important factor" in the transfer analysis. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010). "[W]hen there is no indication that a non-party witness is willing" to testify, the Court must presume its subpoena power will be necessary to secure the witness's attendance. *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than . . . in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

Here, there are several third-party witnesses located in California—and since none have indicated that they are willing to testify, they are presumed unwilling. That presumption is consistent with these third-parties' lack of any disclosed connection to Plaintiff. (If they were willing, that would further support the willing witness factor). As discussed above, these third parties include at least two of the four named inventors, whose testimony will be critical to numerous issues; the former CEO of Networks in Motion, for whom the named inventors worked when the priority applications were filed; Uber, which likely has a license to the Asserted Patents;

and Pioneer and American Honda, both of which have relevant information about invalidating prior art. *See* § 11.D, *supra*. Because these potential witnesses reside in California, a transfer would "ensure[] that the transferee court could compel these individuals to appear." *In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1379.

In contrast, Google is not aware of any relevant third parties in WDTX, let alone any likely to be trial witnesses. This factor "heavily" favors transferring to NDCA. *Apple*, 581 F. App'x at 889. Indeed, it is near dispositive when, as here, the identified and relevant potential "third-party witnesses . . . are overwhelmingly located within the subpoena power of only the transferee venue." *In re Hulu*, No. 2021-142, 2021 WL 3278194, at *4 (Fed. Cir. 2021).

### C. <u>The Relevant Sources of Proof Strongly Favor Transfer</u>

Federal Circuit precedent recognizes that "the bulk of the relevant evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Further, "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval," is relevant to the analysis under this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Here, the overwhelming majority of the relevant documents were created and are maintained by custodians in the Bay Area, CA, within NDCA, or by witnesses far closer to NDCA than to WDTX. *See* § II.B, *supra*; Mazniker Decl. ¶¶ 4, 6; Jones Decl. ¶¶ 6, 8; Huang Decl. ¶¶ 3, 5; Miles Decl. ¶ 6; Martin Decl. ¶¶ 4, 6; Hands Decl. ¶¶ 4, 6; Rubin Decl. ¶¶ 4, 6. Those documents are likely to include evidence about the design, development, and operation of the accused functionalities. But there is no relevant Google engineer in this District and thus no relevant evidence created and maintained here, thus weighing in favor of transfer. *In re TikTok*, 85 F.4th at 358 ("The question is *relative* ease of access, not *absolute* ease of access. . . .").

In contrast, Bluestone is a non-practicing entity likely to have few sources of proof anywhere, let alone any in WDTX. Bluestone does not appear to conduct any significant business activities and therefore is not likely to have many documents, much less any in Texas.

Finally, the potential sources of proof in the possession of the relevant third parties identified above, are likely in NDCA or elsewhere in California, weighing in favor of transfer. *See* § II.D, *supra*; *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-cv-00254-ADA, 2019 WL 8013949, at *3-4 (W.D. Tex. Oct. 7, 2019) (noting that third-party sources of proof are relevant).

This private-interest factor likewise strongly favors transfer.

**D. <u>Local Interests Strongly Favor Transfer</u>**

NDCA has a localized interest in this dispute because "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Local interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty." *In re Chamber of Com. of United State of Am.*, 105 F.4th 297, 308 (5th Cir. 2024). The Federal Circuit "accord[s] significant weight under this factor to the location where the accused product or functionality was 'designed, developed, and tested'" and "no weight to the location of the sale of an accused product where that product is offered nationwide." *3D Surfaces, LLC v. Dell Techs. Inc.*, No. 21-CV-01107-ADA, 2022 WL 3695483, at *9 (W.D. Tex. Aug. 25, 2022) (quoting *In re Apple, Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020)); *see In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022) (holding it is a "clear abuse of discretion" to give weight to general presence in the district without "a connection to the locus of the events giving rise to the dispute").

Here, Google has significant ties to NDCA, where it is headquartered. The Accused

Functionalities of Google Maps are and were developed, designed, and maintained predominantly in NDCA, [redacted] Mazniker Decl. ¶¶ 4, 6; Jones Decl. ¶¶ 6, 8; Huang Decl. ¶¶ 3, 5; Miles Decl. ¶ 6; Martin Decl. ¶¶ 4, 6; Hands Decl. ¶¶ 4, 6; Rubin Decl. ¶¶ 4, 6.

The local interests of WDTX, on the other hand, are not implicated. Any connections Google has with WDTX are not material to this litigation: none of the likely witnesses with relevant knowledge of the Accused Functionalities is here. *See Google*, 2021 WL 4427899, at *6 (local interest favored transfer when accused products "were designed and developed in [NDCA] and are not related to Google's presence in Texas"). Plaintiff makes broad assertions that Google Maps is available to users in Texas to support litigating this action in WDTX. Compl. ¶ 12. But geographically diffuse events, such as alleged infringement nationwide, "do[] not give rise to a substantial interest in any single venue." *Hoffmann-La Roche*, 587 F.3d at 1338. Further, Plaintiff's ties to WDTX are nonexistent; it is registered in Virginia and claims no connections to Texas. Compl. ¶ 2. Accordingly, this public-interest factor also strongly favors transfer.

### E. <u>Practical Considerations Also Favor Transfer</u>

Proceeding in NDCA would make trial easier and less expensive. Google's witnesses would not need to travel to WDTX for pre-trial and trial proceedings. Transfer would thus decrease the disruption and expense of litigation. This case is also in its early stages, so transferring it would not waste judicial effort. NDCA is fully capable of handling the issues in this case, and there is no unique knowledge here that would be lost due to transfer. Thus, practical considerations also favor transfer.

### F. <u>The Remaining Factors Are Neutral</u>

#### 1. The court congestion factor should be accorded no weight

Plaintiff is a non-practicing entity, so this factor should be given no weight. *See In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). In any event, the Federal Circuit has repeatedly noted that WDTX and NDCA "show no significant differences in caseload or time-to-trial statistics." *See, e.g.*, *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021). Moreover, this factor is typically given the least weight because it is the "most speculative." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021); *In re Google, LLC*, Case. No. 25-40788, slip op. 4, Dkt. No. 60-1 (5th Cir. Apr. 7, 2026) (noting that this factor "is a weak signal at best compared to the others" and is "particularly unreliable" in a "complex case").

#### 2. The remaining public interest factors are neutral

Familiarity with the governing law is neutral, as both NDCA and WDTX are well-versed in patent law. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). There do not appear to be any issues of conflict of laws or application of foreign law. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 n.1 (Fed. Cir. 2010), as amended (Jan. 13, 2011).

* * *

Each factor either strongly favors transfer (witness convenience, compulsory process, sources of proof, local interests, and practical considerations) or is neutral (all other factors). This case "presents a clear overall picture: nothing favors the transferor forum, whereas several factors favor the transferee forum." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). "With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *Id.* (quoting with emphasis *Volkswagen II*, 545 F.3d at 315).

## V. <u>CONCLUSION</u>

The Court should transfer the case to NDCA pursuant to 28 U.S.C. § 1404(a).

**PUBLIC VERSION**

Respectfully submitted,

DATED: April 23, 2026

By: 

Andrew T. Radsch (303665)
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000
andrew.radsch@mto.com

Susannah M. L. Gagnon (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105
(415) 512-4000
susannah.gagnon@mto.com

Andrew J. Slottje (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, DC 20001
(202) 220-1100
andrew.slottje@mto.com

Heather E. Takahashi (*admitted to WDTX*)
Adam R. Lawton (*pro hac vice*)
Adam W. Kwon (*admitted to WDTX*)
Kaitlyn M. Rubcich (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
heather.takahashi@mto.com
adam.lawton@mto.com
adam.kwon@mto.com
katie.rubcich@mto.com

*Counsel for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2026, a true and correct copy of the foregoing document was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.

Andrew T. Radsch

**CERTIFICATE OF CONFERENCE**

I hereby certify that on April 22, 2026, pursuant to Local Rule CV-7(g), I met and conferred with counsel for Plaintiff, who indicated that Plaintiff is opposed to the relief requested.

Andrew T. Radsch